ALMA MOTOR CO. *v.* TIMKEN-DETROIT AXLE
CO. ET AL.

No. 11.   Argued April 25, 26, 1945.   Reargued October 24, 25, 1946.—
Decided December 9, 1946.

130

*I. Joseph Farley* argued the cause and filed a brief for petitioner on the original argument.   *Thomas J. Hughes* and *John G. Buchanan* argued the cause for petitioner on the reargument.   *Messrs. Hughes* and *Farley* filed a brief on the reargument.

*Assistant Attorney General Shea* argued the cause for the United States, respondent, on the original argument. With him on the brief were *Solicitor General Fahy, David L. Kreeger* and *Jerome H. Simonds.   Assistant Attorney*

*General Sonnett* argued the cause for the United States, respondent, on the reargument. With him on the brief were *Solicitor General McGrath, Arnold Raum, Paul A. Sweeney* and *Joseph B. Goldman.*

*William A. Stranch* argued the cause for the Timken-Detroit Axle Co., respondent. With him on the briefs was *J. Matthews Neale. James A. Hoffman* was also on the brief on the original argument.

*James D. Carpenter, Jr.* and *John G. Buchanan* filed a brief on the original argument for Roscoe A. Coffman, as *amicus curiae,* urging reversal. *William H. Webb* and *John G. Buchanan, Jr.* were also with them on the brief on the reargument.

MR. CHIEF JUSTICE VINSON delivered the opinion of the Court.

Certiorari was granted in this case February 5, 1945, on a petition addressed to the question of the constitutionality of the Royalty Adjustment Act of October 31, 1942,[1] and of Royalty Adjustment Order No. W–3, issued by the War Department July 28, 1943. We find now, however, that the Circuit Court of Appeals had before it, not only the constitutional question, which was decided, but also a non-constitutional question, which alone might properly have served as an adequate ground on which to dispose of the appeal. This non-constitutional question was neither considered nor decided by the court below, nor argued here. We have concluded, therefore, that we should not pass on the constitutional question at this time, but should vacate the judgment of the Circuit Court of Appeals, and remand the case to it for decision of any non-constitutional issues material to the appeal.

---

[1] 56 Stat. 1013, 35 U. S. C. Supp. V, §§ 89–96.

To explain the reasons for this conclusion, we must state the history of the present proceedings in some detail.

They were begun by a complaint in a District Court filed by respondent, The Timken-Detroit Axle Company, against petitioner, Alma Motor Company, asking a declaratory judgment as to their respective rights under a patent held by Alma and a coextensive license from Alma to Timken. The complaint alleged the existence of the patent, purporting to cover certain "transfer cases" or auxiliary automotive transmissions, and the license, by which Timken was authorized to manufacture the patented articles and required to pay certain specified royalties. It further alleged that Timken was engaged in manufacturing various designs of transfer cases, that some of these were once believed to have been covered by Alma's patent and had been made the subject of royalty payments, but on the basis of later information Timken had concluded that none of them were covered, and that the patent was invalid. It asked for a judgment confirming this conclusion.

Alma answered, claiming that all Timken's transfer cases were covered, that the patent was valid, and that Timken was estopped from challenging validity, and counterclaimed for a money judgment for unpaid royalties.

Following a trial, the District Court filed findings and an opinion,[2] and entered judgment December 2, 1942. It held Timken estopped from challenging the validity of Alma's patent; that certain specified types of Timken's transfer cases (generally those denominated T–32 and T–43) were covered by the patent and license; that Timken was indebted to Alma for royalties thereon; and that other types (generally those denominated T–79) were outside the

[2] *Timken-Detroit Axle Co.* v. *Alma Motor Co.*, 47 F. Supp. 582 (D. Del. 1942).

patent and license. The court indicated that unless the parties could agree on the amount of the royalties so held to be payable, a special master would be appointed to determine the amount.

Shortly before this judgment was entered, Congress enacted the Royalty Adjustment Act, which Alma seeks to attack here. The primary purpose of this Act was to reduce royalties for which the United States was ultimately liable on inventions manufactured for it by a licensee, from pre-war rates to rates appropriate to the volume of production in wartime. Whenever during the war a government contractor manufactured under a license, and the royalties seemed excessive to the head of the department concerned, the latter was empowered to stop payments by notice to the licensor and licensee, and after a hearing, to fix by order "fair and just" royalties, "taking into account the conditions of wartime production." [3] Thereafter, the licensor could collect royalties from the licensee only at the rate so determined. If the licensor felt that the reduction was unfair, his remedy was by suit against the United States in the Court of Claims, where he could recover "fair and just compensation . . . taking into account the conditions of wartime production." [4] Whatever reduction was effected by the order was to inure to the benefit of the United States.

The notice, stopping payment of royalties from Timken to Alma, was issued by the War Department December 30, 1942. Royalty Adjustment Order No. W-3 followed on July 28, 1943, fixing a "fair and just" royalty at zero. The basis of this determination was the alleged invalidity of Alma's patent, which the United States claims that the Act permits it to assert.[5]

---

[3] 56 Stat. 1013, 35 U. S. C. Supp. V, § 89.

[4] 56 Stat. 1013, 35 U. S. C. Supp. V, § 90.

[5] 56 Stat. 1013, 35 U. S. C. Supp. V, § 90.

In the meantime, Alma had taken an appeal from Paragraph 5 of the judgment of the District Court, which held that the T–79 transfer cases were outside the patent. Timken did not appeal. After the Order was promulgated, Timken moved to dismiss the appeal and remand to the District Court with directions to vacate its judgment. The motion was predicated on an affidavit that Timken had manufactured transfer cases for the United States alone, together with the argument that the operation of the Act and Order transferred jurisdiction of the subject matter of the entire case to the Court of Claims. Alma countered with an attack on the constitutionality of the Act and Order, primarily as working a deprivation of property in contravention of the Fifth Amendment.

The United States had at this time already submitted an *amicus* brief, in which it argued that the Order had made the appeal moot; and when Alma's constitutional attack was filed, the United States intervened in support of the Act and Order.

In its opinion [6] the Circuit Court of Appeals considered that the question of the applicability of the Act and Order in this case was simply a question of their constitutional validity. It proceeded to consider this latter question, and decided that both the Act and the Order were entirely valid. Accordingly, it entered the following order:

> ". . . it is now here ordered and adjudged by this Court that paragraph 5 of the judgment of the said District Court in this case be, and the same is hereby vacated and the cause is remanded to the District Court with directions to proceed no further therein unless and until it shall appear to the Court that a justiciable controversy again [7] exists between the parties arising out of the facts set forth in the com-

[6] *Timken-Detroit Axle Co.* v. *Alma Motor Co.*, 144 F. 2d 714 (CCA 3, 1944).

[7] The word "again" was deleted by an order of October 2, 1944.

plaint, except that the Court may, if it deems such action to be appropriate, vacate all or any part of the remainder of the judgment and dismiss the complaint as moot."

The War Department notice was issued after the District Court's judgment, but before appeal was filed in the Circuit Court of Appeals. It appears that at no time did any party urge on the Circuit Court of Appeals or did that court pass on the question whether the T–79 transfer cases were covered by Alma's patent and license. Indeed, it was not until after we had granted certiorari and heard argument at the October 1944 term on the constitutional question, and set the case down for further argument this term, that the United States pointed to this omission, and suggested that the Circuit Court of Appeals should have avoided the question of constitutionality by first considering the question of coverage. It argued here that the prior determination of any non-constitutional questions which might dispose of a controversy is a practice which is dictated by sound principles of judicial administration. It moved to vacate the judgment of the Circuit Court of Appeals, and to remand the case to it for such determination. Both Alma and Timken opposed the motion. Action was withheld pending argument on the motion and the case itself.

This Court has said repeatedly that it ought not pass on the constitutionality of an act of Congress unless such adjudication is unavoidable. This is true even though the question is properly presented by the record. If two questions are raised, one of non-constitutional and the other of constitutional nature, and a decision of the non-constitutional question would make unnecessary a decision of the constitutional question, the former will be decided.[8]

---

[8] *Siler* v. *Louisville & Nashville R. Co.*, 213 U. S. 175, 193; *Light* v. *United States*, 220 U. S. 523, 538; *Spector Motor Co.* v. *McLaughlin*,

This same rule should guide the lower courts as well as this one. We believe that the structure of the problems before the Circuit Court of Appeals required the application of the rule to this case.

At the outset that court was confronted with the merits of the appeal, which involved simply the coverage by the patent and license of the T–79 transfer cases. Later, however, it was confronted also with a problem of jurisdictional nature. This involved the effect wrought by the Act and Order on its power to proceed to an adjudication on the merits. If for any reason, the Act and Order had no applicability in the case, the court should proceed to the merits. If, however, they were controlling, Alma was relegated to its statutory remedy against the United States, and the court would be required to dismiss the appeal, and to vacate Paragraph 5 of the judgment in the District Court.

In the determination of this jurisdictional problem, we are of the opinion that the Circuit Court of Appeals erred. It assumed that this problem involved only the question of the constitutionality of the Act and Order. But the Act and Order, whether or not constitutional, do not control the disposition of this case unless they were intended to apply to it. The question of their applicability is a non-constitutional question, the decision of which might have made unnecessary any consideration of constitutionality.

Were the Act and Order intended to apply? Their terms seem to make that depend upon whether the subject-matter of the appeal—the T–79 transfer cases—were covered by the patent and license. The Act provides that it is only "whenever an invention . . . shall be manufactured . . . for the United States, *with license from the*

323 U. S. 101, 105. See Brandeis, J., concurring in *Ashwander* v. *Tennessee Valley Authority,* 297 U. S. 288, 347.

*owner thereof . . .*" and the department head believes
the stipulated royalties to be unreasonable, that the latter
shall give "written notice of such fact to the licensor and
to the licensee." It is only after such notice that the de-
partment head may fix "fair and just" royalties, and only
"such licensee" who is forbidden to pay additional amounts
as royalties, and only "such licensor" who is relegated to
the Court of Claims.[9] Conversely, if the putative inven-
tion is manufactured without license, or if the putative
patentee is not actually the owner, these powers and
disabilities do not arise. Even Order No. W–3 does not
refer to T–79 transfer cases as such. It forbids the
payment of royalties only on transfer cases "under" this
license, or any license pursuant to this patent, "which
embody . . . the . . . alleged inventions." Again, if
the T–79s are not "under" the Alma-Timken license, or if
they do not "embody" Alma's patented claim, then the
Order expressly leaves Alma's and Timken's rights and
remedies unaffected.

Consequently, coverage of the T–79s, as well as consti-
tutionality of the Act and Order, was a crucial issue in
deciding the jurisdiction of the Circuit Court of Appeals.
If they are covered, the Act and Order apply, and it was
then necessary to decide constitutionality in order to deter-
mine whether the court could proceed to a judgment on the
merits. If the T–79s are not covered, the Act and Order
manifestly do not apply, and the court could proceed to a
judgment on the merits, whether the Act and Order are
constitutional or not. In that event, of course, no consti-
tutional question would be decided.

The Circuit Court of Appeals may have thought that the
applicability of the Act and Order turn not on actual cover-
age, but on a claim of coverage, and hence that applicabil-
ity was undisputed and only constitutionality was perti-

---

[9] 35 U. S. C. Supp. V, § 89.

nent to jurisdiction in this case. Such construction is said to have some support in cases like *Smithers* v. *Smith,* 204 U. S. 632, and *Bell* v. *Hood,* 327 U. S. 678, in which bona fide claims of rights were held to satisfy jurisdictional requirements as to the amount in controversy and as to the existence of a certain federal question, regardless of whether such claims would ultimately be established.

The answer to this argument is that the statutory language [10] which controlled the cited cases expressly refers to the claim as the test of jurisdiction, whereas, as we have shown, the instant Act refers to the objective event. Furthermore, the test in the *Smithers* and *Bell* cases, *supra,* is a condition precedent to the exercise of jurisdiction. Unless such exercise is made to turn on what the plaintiff rather than what the court says is at stake, the court's jurisdictional ruling will often deny the plaintiff a forum when a full hearing might later have shown a right to relief. The test in this case, on the other hand, is a condition subsequent, in certain instances depriving the court of jurisdiction, and the same danger is not present.

Timken contends that the jurisdiction of all suits with respect to inventions manufactured for the United States in wartime is transferred to the Court of Claims, and that the coverage question is immaterial. It argues that where the Royalty Adjustment Act does not accomplish this transfer because the manufacture is not by a licensee, the Act of June 25, 1910, as amended,[11] should apply, and that

---

[10] "The district courts shall have original jurisdiction . . . where the *matter in controversy* exceeds . . . the sum or value of $3,000, and (a) arises under the Constitution or laws of the United States . . ." 28 U. S. C. § 41.

[11] Act of June 25, 1910, 36 Stat. 851, as amended by the Act of July 1, 1918, 40 Stat. 705, 35 U. S. C. § 68, provides in part: "Whenever an invention described in and covered by a patent of the United States shall hereafter be used or manufactured by or for the United States without license of the owner thereof or lawful right to use

it has the same effect. It is said, therefore, that the case should have been dismissed whether there was coverage or not, and that the Circuit Court of Appeals properly refrained from deciding that question.

Assuming the premise is correct, we do not reach the same conclusion. Dismissal can be ordered under the 1910 Act, if it applies, without deciding any constitutional questions, for that Act has already been before this Court and been approved.[12] To order dismissal under the 1942 Act, however, or under one of the two Acts alternatively, requires a determination of the constitutionality of the latter. As we have already indicated, this is sufficient reason for first deciding which Act impels the transfer.

It is true that § 2 of the Royalty Adjustment Act provides that, if the licensor sues in the Court of Claims, the United States "may avail itself of any and all defenses, general or special, that might be pleaded by a defendant in an action for infringement as set forth in title sixty of the Revised Statutes, or otherwise." [13] We deem it clear

---

or manufacture the same, such owner's remedy shall be by suit against the United States in the Court of Claims for the recovery of his reasonable and entire compensation for such use and manufacture . . ."

[12] *Crozier* v. *Krupp*, 224 U. S. 290; *Richmond Screw Anchor Co.* v. *United States*, 275 U. S. 331.

[13] Section 2 provides in full:

"Any licensor aggrieved by any order issued pursuant to section 1 hereof, fixing and specifying the maximum rates or amounts of royalties under a license issued by him, may institute suit against the United States in the Court of Claims, or in the District Courts of the United States insofar as such courts may have concurrent jurisdiction with the Court of Claims, to recover such sum, if any, as, when added to the royalties fixed and specified in such order, shall constitute fair and just compensation to the licensor for the manufacture, use, sale, or other disposition of the licensed invention for the United States, taking into account the conditions of wartime production. In any such suit the United States may avail itself of any and all defenses,

that such defenses would include questions of coverage as well as validity of a patent. But we do not think that § 2 reflects a decision by Congress that all suits involving licenses under the Act and presenting questions of coverage or validity should be tried in the Court of Claims. As respects the problem with which we are now concerned, § 2 does no more than to make available such defenses in the Court of Claims whenever the suits authorized by the Act are brought there.

Both Alma and Timken maintain that the constitutional question could not be avoided by the Circuit Court of Appeals, because the T–32 and T–43 transfer cases were covered, if the T–79s were not, and were therefore necessarily subject to the Order. Indeed, the District Court decided that they were covered, and Timken did not appeal.

This point carries its own refutation. Neither party appealed from the adjudication as to the T–32 and T–43 transfer cases. No claim as to them was before the Circuit Court of Appeals. There is no claim now that a litigant may not appeal from part of a judgment, or that an appeal from part brings up the whole.[14] The Circuit Court of Appeals was not properly concerned with their coverage, or with the applicability to them of the Act or Order. Therefore, the part of its order affecting T–32s and T–43s was unwarranted, and should not now be made the basis for approving a constitutional decision which was otherwise unnecessary.

---

general or special, that might be pleaded by a defendant in an action for infringement as set forth in title sixty of the Revised Statutes, or otherwise."

[14] Rule 73 (b) of the Federal Rules of Civil Procedure provides that the "notice of appeal . . . shall designate the judgment or part thereof appealed from . . ."

Alma objects strenuously to the Government "mending its hold" between the time it urged dismissal in an *amicus* brief in the Circuit Court of Appeals and argued constitutionality there and here, and the time it filed here its motion to vacate and remand. The Government certainly aided and abetted the Circuit Court of Appeals in its error. But Alma is not without fault in creating the confusion. In its "Petition to Review" the Order, Alma asked the Circuit Court of Appeals to hold the Order unconstitutional. In its petition to the Circuit Court of Appeals for rehearing, it argued that the court should not have passed on constitutionality because Timken had not charged any royalties to the United States on T–79s, and the Act and Order were allegedly inapplicable. Before this Court it has returned to its original position.

We agree that much time has been wasted by the earlier failure of the parties to indicate, or the Circuit Court of Appeals or this Court to see, the course which should have been followed. This, however, is no reason to continue now on the wrong course. The principle of avoiding constitutional questions is one which was conceived out of considerations of sound judicial administration. It is a traditional policy of our courts.[15]

The judgment is vacated and the case remanded for further proceedings in conformity with this opinion.

---

[15] *Charles River Bridge* v. *Warren Bridge,* 11 Pet. 420, 553 (1837).