UNITED STATES v. YOUNGSTOWN SHEET & TUBE CO. et al.

Civ. A. No. 25709.

United States District Court
N. D. Ohio, E. D.
July 6, 1948.

Don C. Miller, of Cleveland, Ohio, H. G. Morison, Asst. Atty. Gen., Roy C. Hackley, Jr., Spec. Asst. and Alfred C. Aurich, Spec. Asst., for the United States.

John B. Putnam, and Clyde Comstock, both of Cleveland, Ohio, and Cravath, Swaine & Moore, of New York City, for Youngstown Sheet and Tube Co.

Andrew P. Martin and Frank Harrison, both of Cleveland, Ohio, for American Rolling Mill Co.

John B. Putnam, of Cleveland, Ohio, and Cravath, Swaine & Moore, of New York City, for Bethlehem Steel Co.

W. C. Plummer, of Pittsburgh, Pa., for Jones and Laughlin Steel Corporation.

W. A. McAfee and Russell C. Grahame, both of Cleveland, Ohio, for Wheeling Steel Corporation.

Harry W. Lindsey, Jr., of Chicago, Ill., and Earl W. LeFever, of Cleveland, Ohio, for Inland Steel Co.

Earl W. LeFever, of Cleveland, Ohio, for Crucible Steel Co. of America.

Andrew P. Martin and Frank Harrison, both of Cleveland, Ohio, for Allegheny Ludlum Steel Corporation and Wallingford Steel Co.

Frank Harrison, of Cleveland, Ohio, and Leland K. Neeves, of Chicago, Ill., for Signode Steel Strapping Co.

Hershey, Donaldson, Williams & Stanley, of Baltimore, Md., for Crown Cork and Seal Co., Inc.

Wm. H. Webb, of Pittsburgh, Pa., Clar- B. Zewadski, of Detroit, Mich., Franklin B. Powers, of Youngstown, Ohio, and Howard F. Burns, of Cleveland, Ohio, for Cold Metal Process Co. and Union Nat. Bank of Youngstown, Ohio.

WILKIN, District Judge.

This case came on for hearing on the motion of the plaintiff for a preliminary injunction, impounding pendente lite in the registry of this court the monies now on deposit in Civil Action No. 21910 and all other monies affected by the Royalty Adjustment order of June 11, 1948, and was submitted on the evidence, memoranda, brief, and arguments of counsel.

By order of this court in United States v. Cold Metal Process Co. et al., D.C., 62 F.Supp. 127, Civil Action 21910, monies which certain defendants herein had agreed to pay to Cold Metal Process Company were impounded. Upon termination of such case such impounded funds were released by order of Miller, Judge. Shortly before the date set for the payment of such funds this action was filed, and upon motion of the plaintiff this court granted a temporary restraining order directing the Clerk to retain such impounded funds subject to order of this court after the hearing of this motion for preliminary injunction.

There was no dispute as to the amount impounded in the former case nor as to the amount paid by each company or as to the date of payment. Such payments were as follows:

| | | |
|---|---|---|
| Youngstown Sheet & Tube Co. | $1,235,700 | 12–29–45 |
| American Rolling Mill Co. | 2,407,500 | 12–29–45 |
| Bethlehem Steel Co. | 2,132,100 | 12–29–45 |
| Jones & Laughlin Steel Corp. | 1,380,600 | 12–29–45 |
| Wheeling Steel Corp. | 1,643,400 | 12–29–45 |
| Inland Steel Co. | 600,000 | 12–31–45 |
| Crucible Steel Co. of America | 110,000 | 10–11–46 |
| Signode Steel Strapping Co. - | 39,000 | 3–16–46 |
| Crown Cork & Seal Co., Inc. | 200,000 | 12–29–45 |

The agreements under which said payments were made were offered in evidence and filed as exhibits.

The issue raised by this motion is whether or not such payments are subject to the provisions of the Royalty Adjustment Act, Title 35 U.S.C.A. §§ 89–96, 56 Stat. 1013, an Act to provide for adjusting royalties for the use of inventions for the benefit of the United States in aid of the prosecution of the war, and for other purposes. Counsel for the government in his very clear presentation of the motion said that the critical point and the basic question was whether these payments made in 1945 and 1946 were settlements of claims for infringements, or royalties within the purview of the Royalty Adjustment Act. It was admitted that the payments had been made in settlement of claims for infringement, but counsel for the government asked: "Are they royalties or monies subject to the Royalty Adjustment Act within the intent of Congress in the passage of that Act?"[1]

This court, after careful consideration of the evidence and the arguments, is constrained to hold that the payments impounded were made in settlement of infringement claims and are not royalties and are not within the purview of the Royalty Adjustment Act. The wording of the Royalty Adjustment Act applies whenever articles "patented or unpatented, shall be manufactured, used, sold, or otherwise disposed of for the United States, with license from the owner thereof or anyone having the right to grant licenses thereunder, and such license includes provisions for the payment of royalties". Throughout the Act the words "licensor", "licensee", "royalty", and "license" are used in such a way as to confine the operation of the statute to the relationships and situations within the ordinary meaning of such words.

■ The history of the legislation and the report recommending the Royalty Adjustment Act show that its expressed purpose was "to prevent payment of excessive royalties under patent licenses". It seems that there was no reason to extend the operation of the Act beyond royalties, because Congress by the Act of June 25, 1910, 36 Stat. 851, as amended by the Act of July 1, 1918, 40 Stat. 705, 35 U.S.C.A. § 68 [now 28 U.S.C.A. § 1498], had provided that infringement claims against the United States or any manufacturer for the United States should be by suit against the United States in the Court of Claims. The amended statute said:

"That, whenever an invention described in and covered by a patent of the United States shall hereafter be used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same, such owner's remedy shall be by suit against the United States in the Court of Claims for the recovery of his reasonable and entire compensation for such use and manufacture."

Because of such statute last quoted, counsel for defendants Cold Metal and Trustee argued that it should be presumed by the court that the monies impounded did not cover articles manufactured for the United States. As to such manufacture the defendants had a complete defense against infringement suits.

■ Counsel for the government supported the argument that such payments should be construed as royalties and within the purview of the Royalty Adjustment Act by citing the practice of administrative agencies. This court recognizes that the practice of those charged with the administration of a statute may properly be considered in a case of doubtful construction. But administrative practice cannot overcome a statute which is plain in its commands and which leaves nothing for construction. On all occasions when the Royalty Adjustment Act was construed by other courts its operation was restrained

---

[1] Some of the companies who paid into the impounded fund had operated under limited licenses from Cold Metal for some years prior to 1945, but these licenses did not cover the acts of infringement for which settlement was made. Sums paid or payable under the limited license agreement are not in any way in issue in this case. Such payments are involved in United States v. Thomas Steel Co., No. 24760 in this court, —— F.Supp. ——.*

* Case still pending.

to royalty payments from licensees to licensors. Alma Motor Co., v. Timken-Detroit Axle Co., 329 U.S. 129, 67 S.Ct. 231, 91 L.Ed. 128, Id., 3 Cir., 144 F.2d 714, 716, 717; Yassin v. United States, Ct.Cl., 76 F.Supp. 509; Fulmer v. United States, Ct.Cl., 77 F.Supp. 927.

The Royalty Adjustment order upon which this action is founded (Exhibit A attached to the Complaint) does not even purport to apply to settlements of unliquidated infringement claims, but its recitals clearly indicate that the Board's authority was limited to royalties under existing license agreements.

■ It was conceded by counsel for the defendants Cold Metal and Trustee that if in any case a showing were made that by collusive agreement, fixed amounts were to be paid for the use of patented articles, such payments might properly be treated as royalties even though referred to as damages for infringement. To such a case no doubt the arguments of counsel for the government would apply. Such arrangements for payments would be within the purview of the Royalty Adjustment Act. Such an agreement would in substance be a license and the payments would be royalties no matter what they might be called. But there was no evidence in this case of such collusive agreement. The claims settled by the payments were, at least in part, for infringements antedating the passage of the Royalty Adjustment Act. By the settlement agreements the manufacturers also took licenses from Cold Metal to begin January 1, 1946. Prior to that date they had been infringers. The distinction between payment of royalty and payment of infringement claims is well recognized in the law. Counsel for the government conceded numerous decisions recognizing that distinction, and counsel for the defendants cited a number of such decisions in their brief to the effect that "a release for wrongs done in the past is not the equivalent of a license to do rightfully the same thing in the future." Raytheon Mfg. Co. v. Radio Corp., 286 Mass. 84, 190 N.E. 1, 5.

Legal practice and judicial experience tend to support the assumption that a settlement of an infringement claim is a compromise and therefore not the equivalent of the payment of royalties. The very nature of the settlements made in this case would obviate to some degree the necessity for the operation of the Royalty Adjustment Act. If Cold Metal had had license agreements providing for the payment of royalties when the war came, it might well have cooperated for an adjustment of such royalties in favor of the government and still have fared better on the whole than it did through its infringement suits and their settlement; and for that reason it is hardly likely that the settlement of infringement claims would impose upon the government excessive prices to the same extent as royalty agreements. Such considerations may not be a complete answer to the government's contention, but they do tend to show that the provisions of the Royalty Adjustment Act for the adjustment of royalties could not apply, or only with great difficulty could be made to apply, to payments made as damages.

It was admitted, moreover, that some of the monies impounded quite likely applied to operations involving no charge direct or indirect to the United States. If it were conceded that the Royalty Adjustment Act applied, there would be no evidence to support an order impounding the entire fund and no definite evidence to support an order impounding part of the fund because there was no evidence to indicate what part fell within the provisions of the Act.

■ The court finds that the monies impounded were paid in settlement of infringement claims and holds that the Royalty Adjustment Act is limited in its application to royalty payments by licensees to licensors. The motion for preliminary injunction to restrain the Clerk from paying out the monies impounded in cause No. 21910 is denied.

In accordance with the former order of Judge Miller in said case No. 21910, said funds are therefore released at the expiration of the temporary restraining order, namely, on July 13, 1948.

Said motion also sought an injunction directing payment into this court of "all other monies affected by said Royalty Adjustment order of June 11, 1948". Such other monies would be those amounts which have been earned as royalties since the defendant manufacturers have been operating under general licenses from the Trustee or Cold Metal. If such other monies are not controlled by case 24760, United States v. Thomas Steel Company, the plaintiff would no doubt be entitled to an order impounding them in this case. The court will hear parties further if there is any reason for an order as to such funds.

The motions interposed by other defendants at the time of the hearing are overruled. The court finds that the monies paid by the manufacturers and impounded in this court were paid in full settlement and discharge of the claims for infringement mentioned in the respective settlement agreements. The payment of such monies to Cold Metal and the Trustee in accordance with the orders of this court is a complete discharge of the defendants making such payments.