RICE
v.
WALLS, U. S. Dist. Atty., et al.

PUCKETT v. UNITED STATES.

Nos. 11909, 11910.

United States Court of Appeals
Sixth Circuit.

May 31, 1954.

Thomas F. Marshall, Frankfort, Ky. (Funk, Chancellor & Marshall, Frankfort, Ky., on the brief), for appellants.

J. Leonard Walker, U. S. Atty., Louisville, Ky. (Charles F. Wood, Asst. U. S. Atty., Louisville, Ky., on the brief), for appellees.

Before SIMONS, Chief Judge, and MARTIN and McALLISTER, Circuit Judges.

MARTIN, Circuit Judge.

The appeals in these two cases are from the same United States District Court and involve the same points, so one opinion will be adequate.

The petitions filed by appellants sought restitution to them as owners of slot machines alleged to have been wrongfully seized by agents of the United States under "pretended authority" of the Johnson Act, 15 U.S.C.A. §§ 1171 to 1177. In the Rice case, the appellant was not arrested or indicted for violation of the Johnson Act, or of any other statute; but, in the Puckett case, a warrant for the defendant's arrest was executed. Puckett pleaded not guilty to the criminal charge of being a manufacturer or dealer in slot machines and of failing to register as required by law and has not been brought to trial. We are not concerned, therefore, with the criminal aspect of his law violation.

In his petition for restitution, Puckett included a motion to suppress the evi-

dence obtained by the alleged unlawful search and seizure of his property. In the Rice petition, it was prayed that government officials be enjoined from having him arrested. Both petitions contained a prayer that the warrants of search and seizure issued and executed be quashed.

The position of the United States is that no search warrants were issued against the owners of the slot machines for the reason that they had informed investigating agents of the Federal Bureau of Investigation as to the location and identity of the machines and had voluntarily surrendered them to these government officials, from whom they received receipts. The slot machines were turned over by the F. B. I. Agents to the United States Marshal for the Western District of Kentucky in conformity with provisions for forfeiture of property under the Customs Act, 19 U.S.C.A. §§ 1602 through 1615. The United States Marshal had been designated by the Attorney General as the appropriate official to act in the premises.

The United States Marshal filed an affidavit, showing that he had, pursuant to authority of Executive Order No. 4173, issued April 16, 1951 [16 F.R. 3509], appointed a qualified appraiser, who had formerly been engaged as a dealer in coin-operated machines. The appraisal showed that the total value of the slot machines seized in each instance was less than $1,000. The marshal made further oath that, in accordance with the aforementioned Executive Order, he had caused to be published once a week for three consecutive weeks, in both the Louisville Courier Journal and the Louisville Times (newspapers of state-wide circulation within the Western District of Kentucky), a list of the slot machines seized, together with the locations where they had been taken into possession and the names of the owners of the machines. This published notice contained the monition: "Any person or persons desiring to claim any of said gambling devices must appear and file with the United States Marshal for the Western District of Kentucky a written claim to each gambling device and a bond in the sum of Two Hundred and Fifty Dollars ($250.00) with each claim within twenty (20) days from the date of this notice, in default of which said gambling device will be forfeited and disposed of in accordance with law." The marshal, in his affidavit, named Rice and Puckett and eleven other persons from whom the slot machines had been seized and declared that none of them had filed with him the required claims and bonds to obtain return of the slot machines.

The government contends that the slot machines were seized by agents of the Federal Bureau of Investigation pursuant to the authority of 15 U.S.C.A. § 1177 (the Anti-Slot-Machine Act), as having been used in violation of that Act, which provides: "Any gambling device transported, delivered, shipped, manufactured, reconditioned, repaired, sold, disposed of, received, possessed, or used in violation of the provisions of this chapter shall be seized and forfeited to the United States. All provisions of law relating to the seizure, summary and judicial forfeiture, and condemnation of vessels, vehicles, merchandise, and baggage for violation of the customs laws; the disposition of such vessels, vehicles, merchandise, and baggage or the proceeds from the sale thereof; the remission or mitigation of such forfeitures; and the compromise of claims and the award of compensation to informers in respect of such forfeitures shall apply to seizures and forfeitures incurred, or alleged to have been incurred, under the provisions of this chapter, insofar as applicable and not inconsistent with the provisions hereof: Provided, That such duties as are imposed upon the collector of customs or any other person with respect to the seizure and forfeiture of vessels, vehicles, merchandise, and baggage under the customs laws shall be performed with respect to seizures and forfeitures of gambling devices under this chapter by such officers, agents, or other persons as may be authorized or

designated for that purpose by the Attorney General."

The government insists, moreover, that the appropriate prescribed procedure for forfeiture of the slot machines was followed. The pertinent provisions relating to forfeiture under the customs laws may be found in U.S.C.A., Title 19, §§ 1602 through 1615. The United States Marshal acted in conformity with the directions set forth in section 1607, Title 19 U.S.C.A., as follows: "If such value of such vessel, vehicle, merchandise, or baggage returned by the appraiser, does not exceed $1,000, the collector shall cause a notice of the seizure of such articles and the intention to forfeit and sell the same to be published for at least three successive weeks in such manner as the Secretary of the Treasury may direct. * * *"

Section 1177 of Title 15 U.S.C.A. makes applicable to the seizure of slot machines the following procedure prescribed in section 1608, Title 19 U.S.C.A.: "Any person claiming such vessel, vehicle, merchandise, or baggage may at any time within twenty days from the date of the first publication of the notice of seizure file with the collector [under Executive Order No. 4173, the United States Marshal] a claim stating his interest therein. Upon the filing of such claim, and the giving of a bond to the United States in the penal sum of $250, with sureties to be approved by the collector [in this case, the United States Marshal], conditioned that in case of condemnation of the articles so claimed the obligor shall pay all the costs and expenses of the proceedings to obtain such condemnation, the collector [in this case, the United States Marshal] shall transmit such claim and bond, with a duplicate list and description of the articles seized, to the United States attorney for the district in which seizure was made, who shall proceed to a condemnation of the merchandise or other property in the manner prescribed by law."

Both appellants failed to file claims with the United States Marshal for the return of the slot machines which had been seized and to post bond with the marshal, in compliance with the requirements of 19 U.S.C.A. § 1608.

The United States District Court sustained the motions of the United States Attorney to dismiss the respective petitions of appellants and overruled the motions of the appellants (defendants in the district court) to require the United States to file libels against the seized properties. The district judge based his action upon the decision and opinion of the three-judge court constituted in the Western District of Kentucky in the cases of Morgan v. United States, Schmid v. United States, reported together in 107 F.Supp. 501. He pointed out in his judgment and order that, under the authority of those cases, each defendant had been afforded by sections 1171 to 1177 of Title 15 U.S.C.A., a complete and adequate remedy which must be exhausted before any further legal action could be taken by either of them to recover his property.

We consider that, if the Morgan and Schmid cases (which, we think, are not distinguishable in any material aspect from the instant cases) were correctly decided, the judgments now under review should be affirmed. However, before discussing the opinion in those cases, which was followed and applied by the district judge in the present controversies, we shall undertake to set forth briefly the contentions of the appellants here.

They insist that the protection of the Fourth Amendment to the Federal Constitution and the remedy provided in Rule 41(e) of the Federal Rules of Criminal Procedure, 18 U.S.C.A., require the suppression of the evidence alleged to have been illegally obtained and the restoration of their property averred to have been "wrongfully seized under pretended authority of the Johnson Act." The opinion of Mr. Justice McReynolds in Nathanson v. United States, 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159, is stressed. The principle there applied, that the Fourth Amendment is applicable to warrants under any statute, including reve-

nue and tariff acts, and that no warrant inhibited by it can be made effective by an Act of Congress, or otherwise, does not, in our judgment, gainsay the reasoning and authority upon which the decisions were based in the Morgan and Schmid cases. We think the same comment may be made as to the decision of the United States Court of Appeals for the Second Circuit, emphasized by attorneys for appellants. In re No. 32 East Sixty-Seventh Street, etc., 2 Cir., 96 F.2d 153.

In the Nathanson case, a warrant to search a private dwelling house was found to be invalid because issued without adequate probable cause. In the case just cited from the Second Circuit, the search warrant was held invalid because not issued upon sufficient showing of probable cause. In the cases at bar, the government's position is that the owners of the property voluntarily informed the F. B. I. Agents as to the location and identity of the slot machines, and voluntarily surrendered them to the agents. However this may be, the controlling point here is whether the district court correctly held that appellants must have exhausted the remedies provided in the Johnson Act, 15 U.S.C.A. §§ 1171–1177, for the return of their property before being permitted to claim protection under the Fourth Amendment and to assert such constitutional guarantee pursuant to Rule 41(e) of the Federal Rules of Criminal Procedure.

Appellants urge that no such exhaustion of remedies is required. They cite, among other cases, Go-Bart Importing Co. v. United States, 282 U.S. 344, 51 S.Ct. 153, 75 L.Ed. 374; In re Behrens, 2 Cir., 39 F.2d 561; Centracchio v. Garrity, 1 Cir., 198 F.2d 382; In re No. 32 East Sixty-Seventh Street, etc., supra. They evince awareness, however, of the opinions in two cases among others relied upon by the government. Thompson v. Schwaebe, 9 Cir., 22 F.2d 518, 519, in which it was held that the claimant of a vehicle seized for violation of customs laws is furnished with an adequate remedy by the Tariff Act and cannot maintain suit for an injunction to restrain the sale of the condemned vehicle. The opinion in that case pointed out that the law provides for summary forfeiture and sale by the collector when the appraised value of the property is less than $1,000; but that any person claiming the car may stay all further proceedings before the collector by filing a claim and executing a bond, as provided by the statute. The Court of Appeals for the Ninth Circuit said that the remedy prescribed in the statute would seem to be full, complete and adequate.

In the other case, In re C. I. T. Corporation, D.C.N.D.N.Y., 28 F.2d 50, a well considered district court opinion, it was held that where a customs officer had seized an automobile for violation by its owner of the Tariff Act and the latter had failed to take advantage of the protection offered by that Act by filing a claim and cost bond with the collector before forfeiture, though due to lack of knowledge of the seizure, must be left to the remedy prescribed by the statute and cannot restrain the Collector of Customs from disposing of the automobile.

Appellants contend further that the district court should have heard evidence on their averment that their slot machines had been illegally seized and should have been restored to them before their petitions for restoration of the devices were dismissed. They also insist that their motions for orders requiring the district attorney to establish the government's rights to seize their properties in libel actions should have been sustained. They cite, in support of this last contention, the Go-Bart, the Behrens and the 32 East Sixty-Seventh Street cases listed above, and Colacicco v. United States, 2 Cir., 143 F.2d 410.

In the heat of advocacy, attorneys for appellants have resorted to too strong expression in saying in their briefs: "Certainly this Court will not allow the Government to perpetrate this kind of 'shell game' upon citizens and property owners." This type of invective is vigorously disapproved and adds no weight to

the argument that the four able, experienced and scholarly Kentucky federal judges were wrong in deciding, as all of them have done, against similar contentions of appellants.

Judge Miller, a member of this court of appeals, wrote the opinion in the Morgan and Schmid cases against the United States, reported in 107 F.Supp. 501. District Judges Ford and Swinford concurred in his opinion which was followed and applied by District Judge Shelbourne in the instant cases. In our view, there are no material distinctions between those cases and the cases at bar. Morgan and Schmid instituted separate actions, each seeking to obtain the return of slot machines owned by him and seized by F. B. I. Agents. Following such seizures, the machines were turned over to the United States Marshal for the Western District of Kentucky, who retained possession of them to the date of the trial. The petitions, as amended, charged that the government agents, in violation of the plaintiffs' constitutional and legal rights and without a search warrant or other legal process, searched the premises of each petitioner and seized the slot machines; that, unless the marshal should be enjoined from doing so, the machines would be destroyed by him to the irreparable damage of the plaintiffs; that the machines were not being used by the owners in violation of law; that the petitioners were not "dealers" within the purview of the Johnson Act and were not included among the persons described in that Act; and that the slot machines were neither *mala prohibita* nor *mala in se* under the provisions of the Act.

The amended petitions charged that seizure of the properties had been under the asserted authority of an unconstitutional Act of Congress, namely, the Johnson Act. An injunction was sought on the basis of the alleged unconstitutionality of that Act, thereby necessitating the assembling of a three-judge court in compliance with section 2284 of Title 28, U.S.C.A. In the alternative, the plaintiffs prayed that, should the Act be found

constitutional, the district court adjudge that it was not applicable to the property seized; and that, in either event, the machines should be restored to their respective owners.

After sustaining the various motions made by numerous defendants, by which they were dismissed from the proceedings, the court proceeded to consider the motion of the United States Marshal (the only remaining defendant) to dismiss the complaints as to him. Reference was made to the pertinent provisions of the Johnson Act and to Order No. 4173, April 16, 1951, 16 F.R. 3509, and also to the provisions of section 1605 through 1609 of Title 19, U.S.C.A. The three-judge court, through Judge Miller, wrote, 107 F.Supp. 504: "Under the well settled rule, if the case can be disposed of on the non-constitutional issue without a ruling on the constitutional issue involved, a ruling on the constitutional issue should be avoided." The following cases were cited for this statement: Spector Motor Service v. McLaughlin, 323 U.S. 101, 105, 65 S.Ct. 152, 89 L.Ed. 101; Alma Motor Co. v. Timken-Detroit Axle Co., 329 U.S. 129, 136, 67 S.Ct. 231, 91 L.Ed. 128; Rescue Army v. Municipal Court, 331 U.S. 549, 568–575, 67 S.Ct. 1409, 91 L.Ed. 1666. The opinion proceeded: "The rule appears well settled that where a statute provides for an administrative remedy a party is not entitled to injunctive relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted. (Citing cases.) The rule is applicable in the present case even though the plaintiffs' constitutional rights are alleged to be violated. (Citing cases.) * * Plaintiffs' rights are thus fully protected by the administrative procedure provided by the Act, and they should be required to pursue that remedy instead of seeking injunctive relief through the pending actions." Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638; and Macauley v. Waterman S. S. Corp., 327 U.S. 540, 66 S. Ct. 712, 90 L.Ed. 839, were cited as authority for the last-stated proposition.

We think the foregoing reasoning is sound and well supported by the decisions. However, only a few of the many opinions cited by Judge Miller need be reviewed by this court.

In Alma Motor Co. v. Timken-Detroit Axle Co., 329 U.S. 129, 132, 136–137, 142, 67 S.Ct. 231, 234, 91 L.Ed. 128, the Supreme Court vacated the judgment of a court of appeals based upon determination of a constitutional question and remanded the cause for decision upon any non-constitutional issue material to the appeal. Chief Justice Vinson said: "This Court has said repeatedly that it ought not [to] pass on the constitutionality of an act of Congress unless such adjudication is unavoidable. This is true even though the question is properly presented by the record. If two questions are raised, one of non-constitutional and the other of constitutional nature, and a decision of the non-constitutional question would make unnecessary a decision of the constitutional question, the former will be decided. This same rule should guide the lower courts as well as this one. We believe that the structure of the problems before the Circuit Court of Appeals required the application of the rule to this case. * * * The principle of avoiding constitutional questions is one which was conceived out of considerations of sound judicial administration. It is a traditional policy of our courts."

In Myers v. Bethlehem Shipbuilding Corporation, 303 U.S. 41, 50, 51, 58 S.Ct. 459, 463, 82 L.Ed. 638, Mr. Justice Brandeis declared that it has been a "long settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." In a footnote, some eighteen previous decisions of the Supreme Court were cited in support of the statement that the rule has been most frequently applied in equity, where relief by injunction was sought. The footnote adds, however: "But because the rule is one of judicial administration —not merely a rule governing the exercise of discretion—it is applicable to proceedings at law as well as suits in equity."

Upon the authority of the Myers case, supra, the Supreme Court held in Macauley v. Waterman S. S. Corp., 327 U.S. 540, 66 S.Ct. 712, 90 L.Ed. 839, that the district court was without jurisdiction because the respondent had not exhausted the administrative remedies provided in the Renegotiation Act.

In Smith v. Duldner, 6 Cir., 175 F.2d 629, 631, this court affirmed a decree denying an injunction sought by a landlord against a rent-reduction order issued pursuant to the Housing and Rent Act of 1947, 50 U.S.C.A.Appendix, § 1881 et seq. The per curiam opinion stated: "The rule, however, as to the exhaustion of administrative remedies applies just as forcibly when, as here, the contention is made that the regulations, in not providing for the right to compel attendance of witnesses, and the right of cross examination, are invalid and unconstitutional. Appellant's claim that the order of the Area Rent Director is concerned with her constitutional right and deprives her of due process of law, does not relieve her of the necessity of exhausting the administrative remedies which are afforded to her under the regulations of the Expediter and the Housing and Rent Act of 1947."

The Supreme Court held, in Aircraft & Diesel Equipment Corporation v. Hirsch, 331 U.S. 752, 767, 67 S.Ct. 1493, 91 L.Ed. 1796, that the doctrine of exhaustion of administrative remedies requires not merely the initiation of prescribed administrative procedures, but the pursuance of them to their appropriate conclusion; and that the final outcome of such procedures must be awaited before judicial intervention is sought.

The judgment of the district court in each of the two cases is affirmed.