758 F.2d 189
 Richard NAGY, Plaintiff,
v.
FARMERS INSURANCE EXCHANGE, a foreign insurance company;
Truck Insurance Exchange, a foreign insurance company;
Mid-Century Insurance Company, a foreign insurance company;
Farmers New World Life Insurance Company, a foreign
insurance company; and d/b/a Farmers Insurance Group of
Companies, all jointly and severally, Defendants and/or
Third Party Plaintiffs-Appellees, Cross-Appellants,
v.
COMMISSIONER OF INSURANCE for the State of Michigan,
Involuntary Plaintiff and/or Third Party
Defendant-Appellant, Cross-Appellee.
 Nos. 83-1703, 83-1724.
 United States Court of Appeals,
Sixth Circuit.
 Argued March 6, 1985.
Decided April 4, 1985.
 
 Frank J. Kelley, Atty. Gen. of Michigan, Harry G. Iwasko, Jr., William Chenoweth (argued), Asst. Attys. Gen., Lansing, Mich., for Com'r of Insurance.
 Ronald E. Westen (argued), Thomas F. Kauza (argued), Harvey, Kruse, Westen & Milan, Detroit, Mich., for Farmers Ins. Exchange, et al.
 William A. Boos, Lansing, Mich., amicus curiae for Independent Insurance Agents of Michigan.
 Before MERRITT and MILBURN, Circuit Judges, and WEICK, Senior Circuit Judge.
 MERRITT, Circuit Judge.
 
 
 1
 This action arises from the termination of plaintiff Richard Nagy's insurance agency contract with defendant Farmers Insurance Group. Nagy sought damages from Farmers on the ground that the termination of his contract was illegal under the Michigan Essential Insurance Act, M.C.L.A. Sec. 500.1209. Farmers then joined the Michigan Insurance Commissioner as an involuntary plaintiff, alleging that the Commissioner was advising insurance agents to breach their contracts, and that the Essential Insurance Act (E.I.A.) was unconstitutional under the contract, equal protection and due process clauses of the United States Constitution. The District Court found that Farmers' termination of Nagy was permissible under state law, and Nagy has not appealed this decision. Instead, the present appeal is brought by both Farmers and the Commissioner as cross appellant, who are contesting the scope of the District Court's declaratory judgment holding part of the E.I.A. violative of federal due process guarantees. We find that the District Court should never have reached this question given its disposition of the state law issues, and that as a consequence the present appeal does not present a justiciable question suitable for our resolution by declaratory judgment. Consequently, we dismiss the appeal and cross appeal.I.
 
 
 2
 On October 16, 1976, Nagy, a resident of McComb County, Michigan, became an insurance agent for Farmers Insurance Exchange. He did so pursuant to an Agency Appointment Agreement with Farmers under which he was permitted to place insurance business with other companies only after offering Farmers the right of first refusal. The contract also provided that it could be terminated if Nagy switched insurance policies from Farmers to another agency. During the latter part of 1980, Nagy wrote two hundred and fifty policies for companies which competed with Farmers. Half of those policyholders had been previously insured by Farmers. In the spring of 1981, Farmers sent a three month written notice of termination to Nagy, as required by their agreement.
 
 
 3
 Before Farmers terminated him, Nagy sued Farmers in the McComb County state court, alleging that Farmers terminated his contract in violation of the Michigan E.I.A. because Farmers gave improper notice of termination, failed to notify the Insurance Commissioner of the termination and because Nagy was terminated for refusing to engage in conduct which was illegal under the E.I.A. Nagy sought damages and a preliminary injunction prohibiting Farmers from terminating him.
 
 
 4
 Farmers denied that the termination of Nagy's contract violated state law, and then removed the action to federal district court with jurisdiction predicated on diversity of citizenship. On September 15, 1981, Farmers joined the Insurance Commissioner as an "involuntary plaintiff and/or third party defendant" under Fed.Rule Civ.Pro. 19(a), which requires joinder of necessary parties. Farmers alleged that the Commissioner was advising Nagy and other agents that they were not exclusive agents and could not be terminated except for certain statutory grounds. Farmers requested a preliminary injunction preventing the Commissioner from advising agents that they could not be terminated, and also sought a declaratory judgment that retroactive application of the Michigan E.I.A. would violate the due process, equal protection and contract clauses of the federal constitution.
 
 
 5
 On February 15, 1983, the District Court issued a preliminary injunction prohibiting the Commissioner from interfering with Farmers' contractual rights with Nagy and advising Nagy and other agents that they could only be terminated for grounds enumerated in sections 500.1209(1) and (3).[1] The court held that M.C.L.A. Secs. 500.1209(1) and (3) violate the due process clause of the Fourteenth Amendment because those provisions do not "protect a broad social purpose" and tend to limit the rates charged for insurance.
 
 
 6
 Several months later, the court granted summary judgment for Farmers against Nagy, holding that Nagy was a nonexclusive agent of Farmers, but that he had switched insurance from Farmers to other carriers, and that this provided grounds for termination under his contract and hence was permissible under M.C.L.A. Secs. 500.1209(3)(b) and (3)(d). In the same opinion, the court entered summary judgment for Farmers against the Commissioner, adopting the reasoning of its prior opinion in issuing the preliminary injunction. The court observed that the Commissioner had failed to provide it with "sufficient data which would indicate that the nonexclusive agent network in Michigan is of sufficient size and magnitude to exert competitive leverage ... in a manner and degree which fosters the availability of fair and reasonable rates." It thus held that M.C.L.A. Secs. 500.1209(1) and (3) violate due process, and it is this judgment which is contested on appeal.
 
 II.
 
 7
 The District Court erred in issuing judgment finding sections 500.1209(1) and (3) unconstitutional. Its decision that state law allowed Farmers to terminate Nagy effectively resolved the suit and removed the underlying controversy from consideration. Farmers' request for injunctive relief against the Commissioner was obviously no longer relevant to the underlying action, since Nagy had lost and the Commissioner was no longer advising him to pursue other administrative relief. The court therefore granted purely declaratory relief against a third party after finding no liability when it determined that sections 500.1209(1) and (3) were unconstitutional. After resolution of the liability issue on state law grounds, the third party was no longer a necessary or appropriate party to the lawsuit. In reaching and resolving this constitutional issue, the District Court ignored the basic and longstanding rule of construction that when two questions are raised, and resolution of the non-constitutional question makes unnecessary a decision on the constitutional question, only the non-constitutional question should be decided. Alma Motor Co. v. Timken Co., 329 U.S. 129, 136, 67 S.Ct. 231, 233, 91 L.Ed. 128 (1946).
 
 
 8
 Final resolution of the original dispute between Nagy and Farmers on state law grounds pretermitted the remaining constitutional issues, making them nonjusticiable and inappropriate for declaratory judgment. See 6A Moore's Federal Practice p 57.13, 57-115 (1984). An additional justiciability problem is that the District Court declared section 500.1209 unconstitutional without holding an evidentiary hearing. The record does not contain the necessary facts to issue a sweeping constitutional mandate based on the perceived competitive effects of section 500.1209.
 
 
 9
 In addition, even if it were otherwise appropriate to consider declaratory relief, under the standards set forth by this court recently in Grand Trunk Railroad Co. v. Consolidated Rail Corporation, 746 F.2d 323 (6th Cir.1984), we would decline to render a declaratory judgment on the constitutionality of section 500.1209 based on this limited record, where the underlying controversy has already been resolved under state law and resolution of the constitutional issue is unnecessary to clarify the rights of the parties. See Id. at 326. Farmers argues that it needs declaratory relief to clarify its rights under state law. However, its rights with respect to Nagy have been upheld, and to permit it to now continue to litigate an issue which has no bearing on the underlying dispute would be to allow the Commissioner's involuntary joinder to be used to impermissibly expand the scope of the lawsuit. The Commissioner's forced participation, if justifiable at all, was only necessary because the Commissioner had advised Nagy with respect to bringing the suit and other administrative action, and because the Commissioner had an interest in the question of the E.I.A.'s constitutionality. Resolution of the case in Farmers' favor on state law grounds, however, removed both of these reasons for the Commissioner's participation. On appeal, we are faced with neither a live constitutional issue nor with a concrete dispute between proper adverse parties.
 
 
 10
 Accordingly, we dismiss the present appeal and cross appeal and vacate the District Court's decision insofar as it holds M.C.L.A. Secs. 500.1209(1) and (3) violative of due process.
 
 
 
 [1]
 M.C.L.A. sections 500.1209(1) and (3) read as follows:
 Sec. 1209. (1) Notice, necessity, contents; liability of insurer. An insurer shall give to the commissioner and the agent immediate written notice of the termination of an agent's authority to represent the insurer. The notice shall include the full disclosure with supporting evidence of acts or omissions by the agent which reasonably may be construed to be a violation of this act, or of any other statute, and acts or omissions, which may reflect on the agent's qualifications as an agent or which may adversely affect the public interest. There shall not be liability on the part of, and a cause of action of any nature shall not arise against, the commissioner, an insurer, or an authorized representative of either for any statement made or evidence provided pursuant to this section.
 (3) Reasons for terminating agent's authority. As a condition of maintaining its authority to transact insurance in this state, an insurer transacting automobile insurance or home insurance in this state shall not cancel an agent's contract or otherwise terminate an agent's authority to represent the insurer with respect to automobile insurance or home insurance, except for 1 or more of the following reasons:
 (a) Malfeasance
 (b) Breach of fiduciary duty or trust.
 (c) A violation of this act.
 (d) Failure to perform as provided by the contract between the parties.
 (e) Submission of less than 25 applications for home insurance and automobile insurance within the immediately preceding 12-month period.