**NATIONAL ADVERTISING COMPANY, a subsidiary of Minnesota Mining & Manufacturing Company, a Delaware corporation, Plaintiff-Appellee,**

v.

**The CITY OF ASHLAND, OREGON, a Municipal corporation, Defendant-Appellant.**

No. 81–3076.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 5, 1982.

Decided May 26, 1982.

Alfred A. Hampson, Hampson & Bayless, Portland, Or., for defendant-appellant.

Ben Lombard, Jr., Ashland, Or., for plaintiff-appellee.

Before KENNEDY, FARRIS, and NORRIS, Circuit Judges.

KENNEDY, Circuit Judge:

The City of Ashland, Oregon, passed an ordinance in 1973 ordering that billboards be taken down after a five-year amortization period. National Advertising Company sought a declaration in federal court that the ordinance was preempted by the Highway Beautification Act of 1965, Pub.L. 89–285, Title I, 79 Stat. 1028, now codified, as amended, at 23 U.S.C. § 131 (1976), and by Oregon statutes. Jurisdiction was based on diversity of citizenship as well as on the alleged existence of a federal question. The district court found for National on both federal and state law grounds. Ashland appealed. We reverse, holding that the compensation provisions of the Highway Beautification Act do not create rights enforceable by billboard owners under federal law, and we remand to the district court for reconsideration of the question raised under state law.

I.

Ashland, Oregon, Ordinance § 18.-50.130 declares:

> *Abatement of Billboards and Off-Premise Advertising.* All billboards and other off-premise advertising signs are hereby declared a public nuisance and shall be removed within five (5) years from the effective date of this chapter. (December 20, 1973).

National owned two billboards in Ashland. When the five year amortization period had run, the City of Ashland ordered the billboards to be removed without offering to pay any compensation.

National filed a complaint seeking invalidation of the ordinance via declaratory and injunctive relief, and seeking just compensation under the federal and state constitutions. By the time of the parties' pretrial order, the issues had been narrowed substantially. National's first amendment commercial speech and constitutional just compensation claims were not argued or decided below. The only issues presented

to us are (1) whether the Federal Highway Beautification Act, 23 U.S.C. § 131 (1976), required the payment of *statutory* "just compensation" to National, and (2) whether such payment was required by relevant Oregon statutes.

23 U.S.C. § 131(g) (1976) now states: Just compensation shall be paid upon the removal of any outdoor advertising sign, display, or device lawfully erected under State law and not permitted under subsection (c) of this section, whether or not removed pursuant to or because of this section. The Federal share of such compensation shall be 75 per centum. Such compensation shall be paid for the following:

(A) The taking from the owner of such sign, display, or device of all right, title, leasehold, and interest in such sign, display, or device; and

(B) The taking from the owner of the real property on which the sign, display, or device is located, of the right to erect and maintain such signs, displays, and devices thereon.

States are given a powerful incentive to adopt programs implementing the objectives of the Highway Beautification Act. If a state does not make provision for "effective control," the Secretary of Transportation may withhold 10 percent of the federal highway funds the state would otherwise receive. Section 131(b). This penalty also applies to states which do not pay compensation as required by section 131(g). Provision of statutory compensation is part of the "effective control ... pursuant to this section [131]" which subsection (c) mandates as a prerequisite to receipt of the full amount of highway funds. The Secretary has so interpreted the statute, and this interpretation has been sustained by the District Court of Vermont. *State of Vermont v. Brinegar*, 379 F.Supp. 606 (D.Vt.1974). The United States Attorney General, soon after the bill was passed, had come to the same conclusion. 42 Op. Att'y Gen. 331 (1966). Direct support for the construction comes from the floor discussion of the bill in the Senate.

*Mr. Murphy.* In the event the States, for whatever reason, whether because a State might claim it could not afford the 25 percent [the state share required by subsection (g)], or for any other reason, decided not to pay their share of 25 percent, what would happen? Would it be merely the penalty of funds being reallocated?

*Mr. Randolph.* There would be a penalty of 10 percent withheld from the amounts payable until the State complies.

111 Cong.Rec. 23874 (Sept. 15, 1965).

Even if we were to hold that the actions of the municipality operate to forfeit the state's funds—a point we expressly decline to pass upon—it would still not follow that the state or the municipality must pay the billboard owner at his suit. The scheme of the statute is to grant the state an election, not to mandate payment. While the Highway Beautification Act, as originally proposed, required forfeiture of all federal highway funds as a penalty for a state's failure to implement the Act, the penalty was reduced to ten percent of the funds so that the penalty/incentive would be "not wholly compulsive." 111 Cong.Rec. 24098 (1965) (remarks of Sen. Cooper); *see also id.* at 23881 (adoption of amendment on Senate floor). The courts have consistently relied on this element of choice in upholding section 131 against constitutional attack and in interpreting it. *Markham Advertising Co. v. State of Washington*, 73 Wash.2d 405, 439 P.2d 248, 257 (1968), *appeal dismissed for want of a substantial federal question*, 393 U.S. 316, 89 S.Ct. 553, 21 L.Ed.2d 512 (1969); *South Dakota v. Adams*, 506 F.Supp. 50, 57–58 (D.S.D.), *aff'd sub nom. South Dakota v. Goldschmidt*, 635 F.2d 698 (5th Cir. 1980), *cert. denied*, 451 U.S. 984, 101 S.Ct. 2316, 68 L.Ed.2d 841 (1981); *State of Vermont v. Brinegar*, 379 F.Supp. 606, 615–17 (D.Vt.1974).

We are aware that the statute is not fully "voluntary." Yet we think the correct interpretation of the ten percent penalty is that of Senator Cooper:

[W]e would have to admit that because ... there is this "carrot" or "stick"—

whatever we wish to call it—this 10-percent penalty ... the Secretary still has some influence in dealing with the States to obtain some action.

111 Cong.Rec. 24114 (1965). State decision-making remains crucial to the statutory scheme, and, assuming a state chose to use its police power and not pay statutory compensation, at the risk of loss of a portion of its highway funds, a private plaintiff could not veto a state's choice.

It has been assumed by all the parties here, and apparently by the district court as well, that Congress granted a private right of action to National and those similarly situated to bring suit for payment under the Act. Under recent authority, *e.g., Middlesex County Sewerage Authority v. National Sea Clammers Association*, 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981); *California v. Sierra Club*, 451 U.S. 287, 101 S.Ct. 1775, 68 L.Ed.2d 101 (1981); *Touche Ross & Co. v. Redington*, 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979), no such right of action can be implied. Since the Highway Beautification Act creates no federal rights in favor of billboard owners, it creates no private cause of action for their benefit. *See California v. Sierra Club; Touche Ross & Co. v. Redington.* Whether we say that National had no cause of action or no right to assert in its cause of action, the result is the same: the Highway Beautification Act cannot be the source of a remedy for the wrong National asserts.

## II.

Our construction of 23 U.S.C. § 131 does not dispose of the case. The court below decided plaintiff-appellee's claims under Oregon law and found, essentially, that the challenged ordinance of the City of Ashland had been preempted by an Oregon law. These claims were heard not solely in pendent jurisdiction but also were in the court's diversity jurisdiction.

As an independent ground, National alleged that it was entitled to relief under state law principles, and the trial court ruled in its favor. That ruling, however, was intertwined with the district court's

holding that National is entitled to relief as a matter of federal law, under the Highway Beautification Act. In view of our determination that the Highway Beautification Act cannot be the source of a remedy for National under federal law, it is appropriate for the district court to reconsider its rulings on the state law issues presented by the case. Accordingly, we vacate the judgment to the extent it rests on state law and remand for further proceedings.

The parties not having briefed or argued whether or not abstention is appropriate, *see Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943); *Louisiana Power & Light Co. v. Thibodaux*, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959); *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 813–14, 96 S.Ct. 1236, 1244–1245, 47 L.Ed.2d 483 (1976); *Turf Paradise, Inc. v. Arizona Downs*, 670 F.2d 813 (9th Cir. 1982), we do not reach the issue.

Reversed in part; vacated in part; and remanded for further proceedings.