CITY OF FORT COLLINS, Colorado, a municipal corporation, Petitioner,

v.

ROOT OUTDOOR ADVERTISING, INC.; Gardner Signs, Inc.; James H. Trujillo; Beverly Faye Trujillo; Paul D. Hendrickson; Gary Duncan and Ron Montross, d/b/a D.M.H. Enterprises, a Partnership; Thelma L. Walker; and Colorado Department of Highways, Respondents.

No. 88SC413.

Supreme Court of Colorado, En Banc.

March 5, 1990.

Anderson, Sommermeyer, Wick & Dow, Timothy J. Dow and Kent N. Campbell, Fort Collins, for petitioner.

Wood, Herzog, Osborn & Bloom, P.C., David L. Wood, Fort Collins, for respondents Root Outdoor Advertising, Gardner Signs, J. Trujillo, B. Trujillo, P. Hendrickson, D.M.H. Enterprises and T. Walker.

Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Richard H. Forman, Sol. Gen., and Lynn B. Obernyer, First Asst. Atty. Gen., Natural Resources Section, Denver, for respondent Colorado Dept. of Highways.

Geoffrey T. Wilson, Denver, for amicus curiae Colorado Mun. League.

Justice ROVIRA delivered the Opinion of the Court.

On certiorari review, the City of Fort Collins (City) challenges the court of appeals decision in *Root Outdoor Advertising, Inc. v. City of Fort Collins,* 759 P.2d 59 (Colo.App.1988), which held that (1) the City cannot require the removal of certain nonconforming signs, pursuant to a five-year amortization provision of its sign code, without paying just compensation; and (2) the City may not remove the signs and pay just compensation from its own resources, but must wait for Congress to appropriate federal funds. We believe that the Federal Highway Beautification Act and the Colorado Outdoor Advertising Act prohibit the City from removing the signs without paying just compensation, but that the City may remove the signs and compensate the sign owners without awaiting federal funds. We therefore affirm in part, reverse in part, and remand.

## I

Root Outdoor Advertising, Inc. and Gardner Signs, Inc. own numerous outdoor advertising signs within the City of Fort Collins. James Trujillo, Beverly Trujillo, Paul Hendrickson, Gary Duncan, Ron Montross, and Thelma Walker are owners of real property which is leased to the sign companies for placement of the signs. For clarity, the above parties will be referred to as "sign owners." The signs, which have been in place since before July 1, 1971, are known as "off-premises" signs because they advertise subject matter unrelated to the business conducted on the premises. All of the signs are within 660 feet of federal-aid primary highways as defined in the Highway Beautification Act of 1965, 23 U.S.C. § 131. Further, the signs are situated in areas which have been zoned commercial or industrial since prior to January 1, 1970.

In November 1971, the City adopted a sign code regulating signs, billboards, posters, banners, and other outdoor advertising devices. In 1979, the sign code was amended to regulate off-premises signs. As a result, the sign owners' signs became nonconforming. Section 118–97.1(B) of the City's sign code stated that: "Off-premises signs shall be removed or made to conform to the provisions of this Article within five (5) years after the effective date of this section...." [1] Code of the City of Fort Collins, art. IX, § 118–97.1(B) (1979). Thus, the last date for removal or conformance of the signs was March 20, 1984.

In 1984, the City filed charges against the sign owners for violations of the sign code. The sign owners then filed suit in the Larimer County District Court requesting declaratory relief, a permanent injunction, and damages. The Colorado Department of Highways (CDOH) intervened in the suit on the ground that resolution of the claims in favor of the City could cause Colorado to lose 10% of its federal-aid highway funding. By stipulation, the issues were narrowed to a declaratory judgment whether (1) the sign code effects a taking of property without just compensation or due process of law; and (2) whether the sign code is in conflict with, and preempted by, the Colorado Outdoor Advertising Act, sections 43–1–401 to –420, 17 C.R.S. (1984).

The trial court found that the sign code did not take the sign owners' property without just compensation or due process because it was a reasonable exercise of the City's police power. The court found, how-

---

1. The Code of the City of Fort Collins has been recodified, effective October 30, 1987. The current provision requiring that off-premises signs be removed or brought into conformity within five years is found in article IV, section 29–563(b) of the Code.

ever, that the signs could not be removed without payment of "just compensation" based on the state and federal statutes. The City was not limited to using federal funds to accomplish this purpose, and thus could use its own resources. Finally, the court found that although "amortization" may constitute "just compensation" under certain circumstances, the City must remove the signs pursuant to eminent domain proceedings.

On appeal, the court of appeals held that the sign code was superseded by state statute to the extent that the City must pay just compensation before removing the signs; amortization did not constitute just compensation; and the City could not remove the signs until the state receives federal funds for such purpose.

## II

In 1965, Congress enacted the Highway Beautification Act, 23 U.S.C. § 131 (1966) (federal act). The federal act was enacted to protect the public investment in the interstate and primary highway system, to promote safety and the recreational value of public travel, and to preserve natural beauty. 23 U.S.C. § 131(a) (1966). Pursuant to subsection (b) of section 131, the states are given the primary task of providing for effective control over outdoor advertising. If a state does not make provision for effective control of outdoor advertising, a 10% reduction in the federal aid funds for the state's highways is imposed until such time as the state adopts an appropriate provision. The federal act specifically applies to signs which are "within six hundred and sixty feet of the nearest edge of the right-of-way and visible from the main traveled way of the [interstate system and the primary system of federal highways]." 23 U.S.C. § 131(b) (1989).

Under subsection (c), "effective control" of outdoor advertising signs requires that all signs within 660 feet of federal interstate and primary highways be limited to official and directional signs, signs advertising property for sale or lease, on-site advertising, landmark signs, and signs advertising free coffee.[2] Subsection (d) provides an exception to the prohibition in subsection (c) for signs in commercial and industrial areas. The size, lighting, and spacing of such signs, consistent with customary use, is to be determined by agreement between the states and the Secretary of the Department of Transportation (Secretary).[3]

---

2. 23 U.S.C. § 131(c) (1989) provides:

Effective control means that such signs, displays, or devices after January 1, 1968, if located within six hundred and sixty feet of the right-of-way and, on or after July 1, 1975, or after the expiration of the next regular session of the State legislature, whichever is later, if located beyond six hundred and sixty feet of the right-of-way, located outside of urban areas, visible from the main traveled way of the system, and erected with the purpose of their message being read from such main traveled way, shall, pursuant to this section, be limited to (1) directional and official signs and notices, which signs and notices shall include, but not be limited to, signs and notices pertaining to natural wonders, scenic and historical attractions, which are required or authorized by law, which shall conform to national standards hereby authorized to be promulgated by the Secretary hereunder, which standards shall contain provisions concerning lighting, size, number, and spacing of signs, and such other requirements as may be appropriate to implement this section, (2) signs, displays, and devices advertising the sale or lease of property upon which they are located, (3) signs, displays, and devices, including those which may be changed at reasonable intervals by electronic process or by remote control, advertising activities conducted on the property on which they are located, (4) signs lawfully in existence on October 22, 1965, determined by the State, subject to the approval of the Secretary, to be landmark signs, including signs on farm structures or natural surfaces, of historic or artistic significance the preservation of which would be consistent with the purposes of this section, and (5) signs, displays, and devices advertising the distribution by nonprofit organizations of free coffee to individuals traveling on the Interstate System or the primary system. For the purposes of this subsection, the term "free coffee" shall include coffee for which a donation may be made, but is not required.

3. 23 U.S.C. § 131(d) (1989) provides:

In order to promote the reasonable, orderly and effective display of outdoor advertising while remaining consistent with the purposes of this section, signs, displays, and devices whose size, lighting and spacing, consistent with customary use is to be determined by

Several provisions require that just compensation be paid for the removal of signs. 23 U.S.C. § 131(g) (1989) provides that:

> Just compensation shall be paid upon the removal of any outdoor advertising sign, display, or device lawfully erected under State law and not permitted under subsection (c) of this section, whether or not removed pursuant to or because of this section. The Federal share of such compensation shall be ·75 per centum....

Subsection (k) reiterates the requirement for just compensation, providing "[s]ubject to compliance with subsection (g) of this section for the payment of just compensation, nothing in this section shall prohibit a State from establishing standards imposing stricter limitations with respect to signs ... on the Federal-aid highway systems than those established under this section." 23 U.S.C. § 131(k) (1989).

In order to comply with the federal act, the General Assembly enacted the Colorado Outdoor Advertising Act, sections 43–1–401 to –420, 17 C.R.S. (1984) (Colorado act). The Colorado act expressly states that "it is the intent of the general assembly that Colorado comply with the federal 'Highway Beautification Act of 1965' and rules and regulations adopted thereunder." § 43–1–402(1)(b), 17 C.R.S. (1984). The Colorado act provides for control of outdoor advertising in accordance with the requirements of the federal act, and just compensation must be paid for the removal of a "lawfully permitted nonconforming advertising device." § 43–1–414(2), 17 C.R.S. (1984). Finally, section 43–1–416, 17 C.R.S. (1984), provides that local municipalities or counties may impose stricter controls on advertising devices "so long as such limitations or controls do not jeopardize the re-

ceipt by the state of its full share of federal highway funds."

On July 9, 1971, the State of Colorado entered into an agreement with the Secretary governing regulation of outdoor signs within commercial and industrial zones, pursuant to 23 U.S.C. § 131(d) (1966). The size, lighting, and spacing requirements in the agreement apply only to signs erected after July 9, 1971. Those signs which predate the agreement may remain as "grandfathered" signs. 23 C.F.R. § 750.707(c) (1989).

### III

#### A

■ In *National Advertising Co. v. Department of Highways*, 751 P.2d 632 (Colo. 1988), we held that control of outdoor advertising devices along the state highway system is a matter of mixed statewide and local concern. Thus, the City is free to regulate outdoor advertising, so long as the local ordinances do not conflict with state law. If such a conflict develops, however, the City's ordinance is preempted by state law. Here, the City has enacted an ordinance which requires the removal of signs after a certain time period, with no provision for the payment of compensation. Thus, we must examine the Colorado act to determine whether this ordinance conflicts with any state provision.

■ The City first contends that the Colorado act does not directly impose a just compensation requirement for the removal of these particular signs because they do not fit within the statutory definition of "nonconforming advertising devices." Because section 43–1–414(2), 17 C.R.S. (1984), only requires that just compensation be

---

agreement between the several States and the Secretary, may be erected and maintained within six hundred and sixty feet of the nearest edge of the right-of-way within areas adjacent to the Interstate and primary systems which are zoned industrial or commercial under authority of State law, or in unzoned commercial or industrial areas as may be determined by agreement between the several States and the Secretary. The States shall have full authority under their own zoning laws to zone areas for commercial or industri-

al purposes, and the actions of the States in this regard will be accepted for the purposes of this Act. Whenéver a bona fide State, county, or local zoning authority has made a determination of customary use, such determination will be accepted in lieu of controls by agreement in the zoned commercial and industrial areas within the geographical jurisdiction of such authority. Nothing in this subsection shall apply to signs, displays, and devices referred to in clauses (2) and (3) of subsection (c) of this section.

paid for nonconforming signs, the City concludes that there is no conflict with the state statute.

We agree that these signs do not fit within the statutory definition of "nonconforming advertising devices." [4] Rather, these signs are "grandfathered" signs which are not subject to removal under the Colorado act. § 43–1–404(1)(d), 17 C.R.S. (1984); 2 C.C.R. 601–3(IV)(R) and (VII)(C) (1983). Because such signs are not subject to removal, the absence of a just compensation requirement does not necessarily mean that no compensation is due upon their removal, or that no conflict exists between the ordinance and the statute. We need not consider the City's argument further, however, because we believe that removal after an amortization period jeopardizes Colorado's receipt of its full share of federal highway funds. Thus, the City's ordinance is preempted by section 43–1–416, 17 C.R.S. (1984).

B

■ The City contends that signs in commercial or industrial zones are exempted from control under 23 U.S.C. § 131(c) (1989), because they are considered separately in subsection (d). The City concludes that because these signs are not controlled by subsection (c), and because they were in existence prior to the effective date of the agreement between the state and the Secretary pursuant to subsection (d), the signs are wholly outside the scope of the federal act. We disagree.

Under subsection (c), "effective control" requires that *all* signs with 660 feet of federal interstate and primary highways be limited to those signs listed in the subsection. *See supra* note 2. Thus, under subsection (c), the signs are subject to removal under the federal act. Subsection (d), however, provides a permissive exception for the erection and maintenance of signs in industrial and commercial areas which otherwise would be prohibited by subsection (c). The size, lighting, and spacing of such signs must be determined in an agreement between the state and the Secretary. However, this does not mean that signs which predate the agreement are not within the ambit of the federal act. In fact, the regulations promulgated by the Federal Highway Administration of the Department of Transportation (FHWA), expressly state that those signs which are grandfathered by the state-federal agreements are controlled by the provisions of 23 C.F.R. § 750.707 (1989). [5] These regulations were promulgated to implement the provisions of the federal act, 23 U.S.C. § 131 (1966).

The City relies on *Ackerley Communications, Inc. v. City of Seattle*, 92 Wash. 2d 905, 602 P.2d 1177 (1979), *appeal dismissed*, 449 U.S. 804, 101 S.Ct. 49, 66 L.Ed.2d 7 (1980), to support its contention that these signs are outside the scope of the federal act. In *Ackerley*, the court held that signs which predated the state-federal agreement were controlled neither by subsection (c) or subsection (d) of the federal act, and thus could be removed without compensation. We reject the reasoning in *Ackerley* as unsound. The conclusion reached in that case contravenes the plain language of the federal act and

**4.** A "nonconforming advertising device" is defined as an "advertising device which was lawfully erected under state law prior to January 1, 1971, and has been lawfully maintained in accordance with the provisions of this part 4 or prior state law, except those advertising devices allowed by section 43–1–404(1)." § 43–1–403(12), 17 C.R.S. (1984). Turning to section 43–1–404(1), we see that advertising devices, located in areas zoned for industrial or commercial uses prior to January 1, 1970, may be erected and maintained. § 43–1–404(1)(d), 17 C.R.S. (1984). Because these signs are located in areas which were zoned for commercial use prior to January 1, 1970, they do not fit within the definition of "nonconforming advertising devices."

**5.** 23 C.F.R. § 750.707(a) (1989) provides:

The provisions of § 750.707 apply to nonconforming signs which must be removed under State laws and regulations implementing 23 U.S.C. 131. These provisions also apply to nonconforming signs located in commercial and industrial areas within 660 feet of the nearest edge of the right-of-way which come under the so-called grandfather clause contained in State–Federal agreements.

the federal regulations.[6]

C

■ In our opinion compensation is required by subsection (g) of the federal act. That subsection requires just compensation to be paid upon the removal of any outdoor advertising sign lawfully erected under state law and not permitted under subsection (c). Because the signs in question do not fit within any of the exemptions in subsection (c), they fall within the express language of the compensation provision. The fact that such signs may have been protected by the agreement between the state and the Secretary has no bearing on whether the signs are permitted under subsection (c). The literal language of the federal act therefore compels compensation. *See e.g., RHP, Inc. v. City of Ithaca,* 91 A.D.2d 721, 457 N.Y.S.2d 645 (1982); *Metromedia, Inc. v. City of San Diego,* 26 Cal.3d 848, 164 Cal.Rptr. 510, 610 P.2d 407 (1980), *rev'd on other grounds,* 453 U.S. 490, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981). Further, federal regulations make it clear that just compensation must be paid for the removal of signs which are grandfathered under the state-federal agreements covering signs in commercial and industrial zones. 23 C.F.R. § 750.707(e) (1989).

This is true even when a municipality is removing the sign under local ordinances which are stricter than the federal controls. In 1978, Congress amended subsection (g) to require just compensation for the removal of all signs within the act's control zone, "whether or not removed pursuant to or because of [the federal act]." Surface Transportation Assistance Act of 1978, Pub.L. No. 95-599 § 122, 92 Stat. 2689, 2700 (codified at 23 U.S.C. § 131(g) (1989)). *See, e.g., City of Houston v. Harris County Outdoor Advertising Ass'n,* 732 S.W.2d

42 (Tex.App.1987); *Lamar–Orlando Outdoor Advertising v. City of Ormond Beach,* 415 So.2d 1312 (Fla.App.1982). Moreover, subsection (k) only permits stricter standards to be imposed "subject to compliance with subsection (g) ... for the payment of just compensation." Finally, the FHWA, in reviewing the 1978 amendments to the federal act in an advance notice of proposed rulemaking, stated that:

> The States are required to ensure that just compensation is paid for any sign lawfully erected along the Interstate and primary systems and required to be controlled, even though the removal is made pursuant to a State or local law unrelated to the Highway Beautification Act. The amendment has been interpreted to apply to and guarantee the payment of just compensation for all signs lawfully erected under State law and in existence on or after November 6, 1978.... Failure to provide compensation for such signs will subject the State to a reduction of its Federal-aid apportionment.

44 Fed.Reg. 25,389 (1979).

D

■ Payment of just compensation is part of the "effective control" which states must provide in order to preserve their federal funding. *National Advertising Co. v. City of Ashland,* 678 F.2d 106 (9th Cir.1982); *Vermont v. Brinegar,* 379 F.Supp. 606 (D.Vt.1974). Thus, if the City's ordinance does not comply with the just compensation requirement of the federal act, it conflicts with the Colorado act, and is preempted.

We must now determine whether "amortization" constitutes just compensation so as to satisfy the federal act. "Amortiza-

---

**6.** Further, we note that after *Ackerley* was decided, the Department of Transportation notified the State of Washington that it was in danger of losing 10 percent of its federal highway funds because *Ackerley* permitted the removal of signs covered by the federal act without payment of just compensation. Subsequently, the State of Washington and Ackerly reached a settlement agreement which protected the state's federal funds.

In *National Advertising Co. v. Department of Highways,* 751 P.2d 632 (Colo.1988), we again noted that one of the primary purposes of the Colorado act was to insure the state's receipt of its full share of federal highway funds. The provisions of the act must be construed at all times to effectuate this purpose. Therefore, we find it inadvisable to rely on *Ackerley* as a proper interpretation of the federal act.

tion," as used in the City's ordinance, constitutes a period of time which a nonconforming sign is permitted to remain before it must be brought into conformity or removed. It is an attempt to allow a sign owner to recoup some of his expenditure in the sign. After the expiration of the amortization period, no further compensation is due the sign owner. Removal of a sign by use of amortization, as opposed to eminent domain, is an exercise of a municipality's police powers. "Amortization," in this sense, contains no connotation of compensation or a requirement therefor. *Art Neon Co. v. City & County of Denver,* 488 F.2d 118 (10th Cir.1973), *cert. denied,* 417 U.S. 932, 94 S.Ct. 2644, 41 L.Ed.2d 236 (1974).

We do not believe that "amortization" satisfies the just compensation requirement of the federal act. The language of the act itself appears to require monetary compensation. Subsection (g) states that: "Just compensation *shall be paid* upon the removal of any outdoor advertising sign...." (Emphasis added.) Thus, substitution of an amortization period for the payment of monetary compensation appears to be contrary to the language of the statute.

Moreover, the legislative history of the federal act and its amendments makes it clear that the just compensation provision was inserted to prevent states from using their police powers to remove signs. The original version of the federal act authorized the use of police power rather than the payment of just compensation for removal of signs. Subsection (g) originally read:

> Whenever a State shall submit evidence satisfactory to the Secretary that it is unable to secure effective control, as herein provided, under its police powers, Federal-aid funds may be used to pay the Federal pro rata share of the costs of providing effective control by purchase or condemnation.

S.2084, 89th Cong., 1st Sess. § 101(g) (1965). Congress rejected the use of police power, adding the compensation provision of subsection (g) in the belief that compensation would prevent economic devastation for billboard owners. In discussing the just compensation requirement, the Senate Committee on Public Works stated:

> This section, as originally proposed, would have required the States, wherever the authority exists, to exercise their police power in acquiring advertising rights. The committee emphatically and unanimously rejects the use of police power in acquiring these rights, and has provided for the use of Federal funds for paying the Federal pro rata share of the acquisition costs of such rights through purchase or condemnation. Such payment is mandatory, not permissive, on the States.

S.Rep. No. 709, 89th Cong., 1st Sess. 7 (1965), U.S.Code Cong. & Admin.News 1965, p. 3710. Similar remarks appear in the report of the House Committee on Public Works. *See* H.R.Rep. No. 1084, 89th Cong., 1st Sess. 71 (1965), U.S.Code Cong. & Admin.News 1965, p. 3710.

Subsequent congressional actions further demonstrate a conscious political decision to reject the use of an amortization provision to comply with the federal act. Prior to 1978, several courts held that a municipality's use of its police power was not inconsistent with the requirements of the federal act. *See, e.g., Art Neon Co. v. City & County of Denver,* 488 F.2d 118 (10th Cir.1973), *cert. denied,* 417 U.S. 932, 94 S.Ct. 2644, 41 L.Ed.2d 236 (1974). Further, the FHWA issued a decision which declined to assess a penalty on a state when a municipality removed a sign pursuant to its police power. In response, Congress amended the act to require just compensation for the removal of all signs within the act's control zone, "whether or not removed pursuant to or because of [the federal act]." Surface Transportation Assistance Act of 1978, Pub.L. No. 95–599 § 122, 92 Stat. 2689, 2700 (codified at 23 U.S.C. § 131(g) (1989)). The 1978 amendment was designed to prevent the use of general zoning ordinances as a means of circumventing payment under the act. *See* H.R.Rep. No. 1485, 95th Cong., 2d Sess. 15 (1978), U.S.Code Cong. & Admin.News 1978, pp. 6575, 6591; *Lamar–Orlando Outdoor Advertising v. City of Ormond Beach,* 415

So.2d 1312 (Fla.App.1982); *City of Whitewater v. Vivid, Inc.,* 140 Wis.2d 612, 412 N.W.2d 519 (1987); Note, *Billboard Removal: What Amount of Compensation is Just?,* 6 Va.J. Natural Resources L. 323 (1987).

Further evidence that the term "just compensation" requires monetary compensation is found in the federal regulations which control the payment of compensation for the removal of a sign. The regulations speak in terms of appraisals, market value, and monetary damages. *See* 23 C.F.R. § 750.304(c)–(d) (1989). Moreover, the administrative interpretation of the 1978 amendments by the FHWA emphasizes that amortization is unacceptable. In 44 Fed.Reg. 25,390 (1979), the FHWA stated:

> The 1978 amendments dealing with just compensation no longer allow the States or local governments to remove signs without compensation following the expiration of an amortization period. In the future, any sign removed along Federal-aid Interstate and primary systems must be compensated for, if the sign was legally erected and in existence on or after November 6, 1978, ...

We are entitled to give deference to the interpretation given the statute by the FHWA since we find no compelling indications that it was wrong. *Columbia Broadcasting Sys., Inc. v. Democratic Nat'l Comm.,* 412 U.S. 94, 93 S.Ct. 2080, 36 L.Ed.2d 772 (1973). In light of the legislative history of the just compensation provision, we believe due respect should be given to the administrative interpretation of the statute by those charged with administering it. *Alper v. State,* 96 Nev. 925, 621 P.2d 492 (1980).

Moreover, the Attorney General of the United States, in an opinion issued November 16, 1966, concluded that states which decide to use their police power to remove outdoor advertising signs, without payment of compensation, will be in violation of the act so as to incur the 10% penalty provided

in subsection (b). 42 Op.Att'y Gen. 331 (1966).

Finally, numerous jurisdictions have concluded that an amortization provision does not constitute just compensation as required by the federal act. *See Vermont v. Brinegar,* 379 F.Supp. 606 (D.Vt.1974); *Metromedia, Inc. v. City of San Diego,* 26 Cal.3d 848, 164 Cal.Rptr. 510, 610 P.2d 407 (1980), *rev'd on other grounds,* 453 U.S. 490, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981); *City of Salinas v. Ryan Outdoor Advertising,* 189 Cal.App.3d 416, 234 Cal.Rptr. 619 (1987); *Lamar–Orlando Outdoor Advertising v. City of Ormond Beach,* 415 So.2d 1312 (Fla.App.1982); *Battaglini v. Town of Red River,* 100 N.M. 287, 669 P.2d 1082 (1983); *City of Houston v. Harris County Outdoor Advertising Ass'n,* 732 S.W.2d 42 (Tex. App.1987); *City of Whitewater v. Vivid, Inc.,* 140 Wis.2d 612, 412 N.W.2d 519 (1987); *c.f. Markham Advertising Co. v. State,* 73 Wash.2d 405, 439 P.2d 248 (1968).

For the foregoing reasons, we believe that the City's amortization provision of its zoning ordinance does not provide "just compensation" as is required by the federal act, and therefore, the ordinance is preempted by section 43–1–416, 17 C.R.S. (1984), of the Colorado act.[7]

## IV

▮ The court of appeals held that section 43–1–414(3), 17 C.R.S. (1984), prohibited the City from removing a sign until the federal share of the compensation required to be paid becomes available to the state. We disagree.

Section 43–1–414(3), 17 C.R.S. (1984), provides:

> No advertising device shall be required to be removed until the federal share of the compensation required to be paid upon acquisition of such device becomes available to the state.... [A]nd no state funds shall be used to pay just compensation for any advertising device located

---

7. Our decision applies only in those instances when a sign is located within 660 feet of an interstate or federal-aid primary highway. We do not consider or decide whether a municipality may utilize an amortization provision when removing a sign which is not located in such a controlled area.

along a secondary highway in this state until the federal share of such compensation becomes available to the state.

All of the parties in this case, the City, sign owners, and CDOH, agree that the court of appeals erred in its interpretation. The statutory provision in question mirrors 23 U.S.C. § 131(n) (1989), which states that "no sign, display, or device shall be required to be removed under this section if the federal share of the just compensation to be paid upon removal of such sign, display, or device is not available to make such payment." We believe that both section 43–1–414(3), 17 C.R.S. (1984), and 23 U.S.C. § 131(n) (1989) do not prohibit the City from removing the signs by payment with municipal funds. The statutory provisions were designed simply to excuse removal when funds are not available, rather than to prohibit such removal. An interpretation requiring local municipalities to allow nonconforming signs to remain until compensation is available from the federal government is unreasonable and renders the provision allowing municipalities to develop stricter controls a nullity.

Because we believe that the court of appeals misinterpreted the state act to restrict a municipality from using its own funds, we reverse that portion of the judgment. We affirm the court of appeals determination that just compensation is required to be paid in this case; that amortization does not constitute just compensation; and that the City's ordinance is preempted to the extent that it conflicts with the Colorado Outdoor Advertising Act.

Accordingly, the judgment is reversed in part, affirmed in part, and the case is remanded to the court of appeals with directions to affirm the judgment of the trial court.