**LAMAR ADVERTISING COMPANY, Plaintiff,**

v.

**CHARTER TOWNSHIP OF CLINTON, Defendant.**

No. CIV. 01–40215.

United States District Court, E.D. Michigan, Southern Division.

Jan. 22, 2003.

Michael J. Laramie, Bodman, Longley, Troy, MI, James J. Walsh, Bodman, Longley, Ann Arbor, MI, for plaintiff.

John A. Dolan, York, Dolan, Clinton Township, MI, for defendant.

## *ORDER*

GADOLA, District Judge.

Before the Court is Plaintiff's Motion for Summary Judgment. Also before the Court is Defendant's "Motion to Dismiss or for Summary Judgment." Both parties filed timely responses to the motions and timely reply briefs. The Court elects to proceed without a hearing. *See* E.D. Mich. LR 7.1(e)(2). For the reasons set forth below, the Court will grant Plaintiff's Motion and deny Defendant's Motion.

## I. BACKGROUND

Plaintiff builds and maintains outdoor advertising displays, commonly known as billboards. One of its billboards is located approximately 25 to 75 feet from the boundary of Interstate 94, within the territory of Defendant. Defendant is a charter township in Macomb County, Michigan.

Plaintiff does not own the land on which its billboard stands; rather, the land is leased from the real property owner, Paul Turkal. The billboard itself is a trade fixture owned by Plaintiff; i.e., it is the personal property of the lessee (Plaintiff) and not the lessor (Dr. Turkal).

The billboard was lawfully built in 1980 after a building permit was obtained from Defendant. In 1993, Defendant enacted a new sign ordinance, which changed the status of this billboard from conforming use to nonconforming use. Nonetheless, Michigan zoning law mandates that Defendant allow such a previously-conforming billboard to remain in place.[1] However, according to depositions of Defendant's employees, Defendant has an informal policy of trying to remove nonconforming billboards. *See* Pl. Mot. Ex. J at 27; Def. Mot. Ex. E at 6, 8; Def. Mot. Ex. F at 37, 41.

In 1994, Dr. Turkal sought Defendant's approval to construct a new building and parking lot in connection with his existing veterinary clinic and kennel on the property. Defendant rejected Dr. Turkal's request because the proposed parking lot violated Defendant's zoning ordinance requiring a twenty-five-foot setback from undeveloped roads. An undeveloped road, Stevenson Road, runs along the entire

---

1. *See* Mich. Comp. Laws § 125.286(1) ("The lawful use of a dwelling, building, or structure and of land or a premise as existing and lawful at the time of enactment of a zoning ordinance, or, in the case of an amendment of an ordinance, then at the time of the amendment, may be continued although the use does not conform with the ordinance or amendment.").

eastern boundary of the property, and Dr. Turkal's plans called for a new parking lot in the southeast corner of the property.

After the rejection, Dr. Turkal petitioned Defendant for a variance that would allow him to construct the parking lot seventeen feet closer to Stevenson Road than the ordinance permitted. Defendant granted the variance in 1994, but Defendant imposed an unrelated condition as a part of the variance: the billboard, which is located on the opposite (western) side of the property from Stevenson Road and on the opposite (northwest) corner of the property some 200 feet away from the new parking lot, be removed when the existing lease expired. Under the variance, Dr. Turkal obtained a building permit in 1995.

At the time the variance was granted, the billboard at issue in this case was owned by Plaintiff's predecessor-in-interest, the National Advertising Company ("National"). Despite Defendant's unrelated variance condition calling for the billboard to be removed when the existing lease expired, Dr. Turkal renewed his lease with National in 1996 for a principal term of five years. Plaintiff acquired the billboard and National's rights under the lease in 1997. In that same year, Defendant informed Dr. Turkal of the inconsistency between his renewal of the lease and the variance condition, and, in April 1998, Defendant revoked Dr. Turkal's building permit. In response, Dr. Turkal sued Defendant in state court in order to resume construction on his property and to invalidate the unrelated condition in the variance. Neither National nor Plaintiff were parties in Dr. Turkal's suit. In July 1998, Dr. Turkal and Defendant settled that suit. The settlement resulted in a consent judgment that allowed construction to continue but required Dr. Turkal to remove the billboard within sixty days of April 4, 2001, which was the date the principal term of the 1996 lease with National (and then Plaintiff) ended. The enforceability of certain aspects of this consent judgment concerning the billboard is in doubt, however, because the consent judgment erroneously stated that Dr. Turkal owned the billboard. As stated *supra* and as the 1996 lease and all prior leases in this case make clear, the billboard is a trade fixture owned by the lessee (first National and now Plaintiff) and not Dr. Turkal. *See also infra.*

Nevertheless, Defendant sought to enforce its sign ordinance and the variance against Plaintiff after the principal term of Plaintiff's lease with Dr. Turkal expired on April 4, 2001. Although the principal term of lease expired, the lease includes a provision for a year-to-year term after the principal term ends; further, Dr. Turkal desires to continue the tenancy. *See* Pl. Mot. Ex. H at ¶ 4 ("I [ (Dr. Turkal) ] earn substantial income by leasing a portion of the premises to [Plaintiff]. I wish to continue leasing to [Plaintiff] that portion of my property where the billboard stands so that [Plaintiff] can continue to use the billboard for advertising purposes."). Still, Defendant is attempting to force the removal of Plaintiff's billboard through Dr. Turkal or to remove the billboard itself. In fact, Defendant sent a blunt letter to Dr. Turkal on June 28, 2001, threatening to "remove the sign itself" within thirty days of the letter if Dr. Turkal did not remove Plaintiff's billboard. Pl. Mot. Ex. L. Further, Defendant has not paid or offered any compensation to Plaintiff for the removal of its billboard.

In the face of this threat to its property, Plaintiff filed the Complaint on August 2, 2001, alleging that the removal condition in the variance, if enforced, would violate Plaintiff's First Amendment rights. The Complaint also alleges that, without just compensation, the forced removal of Plaintiff's billboard would violate Michigan stat-

utory provisions including the Highway Advertising Act, Mich. Comp. Laws § 252.301 *et seq.* Plaintiff's state law claims are properly before this Court because all of the requirements of diversity jurisdiction, 28 U.S.C. § 1332, have been met.

On September 12, 2001, Defendant filed a "Motion to Dismiss, or in the Alternative, for Summary Judgment." In that motion, Defendant argued that Plaintiff lacked standing because it was not the owner of the billboard. On November 7, 2001, this Court denied the motion because the Court found "ample and credible evidence" that Plaintiff did own the billboard.

Plaintiff's present Motion for Summary Judgment and Defendant's present "Motion to Dismiss or for Summary Judgment" were both filed on August 21, 2002. In its present Motion, Defendant's primary attack on the Complaint is, again, that Plaintiff lacks standing, but in this Motion, it argues that Plaintiff lacks standing because Plaintiff lacks a protectable interest. Defendant's Motion alternatively argues that Plaintiff's constitutional and statutory claims are without merit. On the other hand, Plaintiff's Motion focuses exclusively on its Highway Advertising Act claim for just compensation. Because "a non-constitutional issue should be decided before a constitutional issue," Plaintiff maintains that "the Court need not address the [F]irst [A]mendment issue if [Plaintiff] prevails under the Michigan Highway Advertising Act." Pl. Mot. at 1 n. 1 (citing *Communist Party of the United States v. Subversive Activities Control Bd.,* 351 U.S. 115, 122, 76 S.Ct. 663, 100 L.Ed. 1003 (1956); Mich. Comp. Laws § 252.304(a)). Finally, as to the desired relief, Plaintiff's Motion requests that the Court permanently enjoin Defendant from removing Plaintiff's billboard or requiring or causing the removal of the billboard unless and until Plaintiff is paid just compensation.

## II. LEGAL STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Martin v. Ohio Tpk. Comm'n,* 968 F.2d 606, 608 (6th Cir.1992).

In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party. *See 60 Ivy St. Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir. 1987). The Court is not required or permitted, however, to judge the evidence or make findings of fact. *See id.* at 1435–36. The moving party has the burden of showing conclusively that no genuine issue of material fact exists. *See id.* at 1435.

A fact is "material" for purposes of summary judgment where proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *See Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir.1984). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving

party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Thus, where a reasonable jury could not find that the non-moving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *See id.; Feliciano v. City of Cleveland,* 988 F.2d 649, 654 (6th Cir.1993).

Once the moving party carries the initial burden of demonstrating that no genuine issues of material fact are in dispute, the burden shifts to the nonmoving party to present specific facts to prove that there is a genuine issue for trial. To create a genuine issue of material fact, the nonmoving party must present more than just some evidence of a disputed issue. As the Supreme Court of the United States has stated, "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmoving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 290, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); *Dombrowski v. Eastland,* 387 U.S. 82, 87 S.Ct. 1425, 18 L.Ed.2d 577 (1967)); *see also Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Consequently, the nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury. *See Lucas v. Leaseway Multi Transp. Serv., Inc.,* 738 F.Supp. 214, 217 (E.D.Mich.1990) (Gadola, J.), *aff'd,* 929 F.2d 701 (6th Cir.1991). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505; *see also Cox v. Ky. Dep't of Transp.,* 53 F.3d 146, 150 (6th Cir.1995).

## III. ABSTENTION CONSIDERATIONS

In this diversity action concerning Michigan's Highway Advertising Act, the Court is required to decide questions of state law that have not been resolved by Michigan's courts and that are arguably unclear. The general rule in such a diversity case is for the federal district court to go forward and decide the state law question; that is, the federal district court should not abstain (i.e., wait for the State to clarify or resolve the state law issue). *See Allegheny County v. Frank Mashuda Co.,* 360 U.S. 185, 188–89, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959); *Meredith v. City of Winter Haven,* 320 U.S. 228, 236–37, 64 S.Ct. 7, 88 L.Ed. 9 (1943); *Krakoff v. United States,* 31 Ohio Misc. 252, 431 F.2d 847, 848–49 (6th Cir.1970). The rationale behind this general rule is clear: since Congress has adopted a policy of opening the federal courts to diversity cases under § 1332, the federal courts should not nullify this policy by refusing to adjudicate such cases "merely because they involve state law or because the law is uncertain or difficult to determine." *Meredith,* 320 U.S. at 236, 64 S.Ct. 7.

There are two narrow exceptions to this general rule. In *Louisiana Power and Light Company v. City of Thibodaux,* the Supreme Court of the United States found abstention was appropriate in a diversity case because of the "special and peculiar nature" of eminent domain proceedings. 360 U.S. 25, 28, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959). The Supreme Court reasoned that because issues of eminent domain are

"intimately involved with [the State's] sovereign prerogative" abstention is justified when important issues of state law are unclear. *Id.; see also* Erwin Chemerinsky, *Federal Jurisdiction* § 12.2.2 (3d ed.1999).

The only other Supreme Court case finding abstention to be appropriate in a diversity case is *Kaiser Steel Corporation v. W.S. Ranch Company*, 391 U.S. 593, 88 S.Ct. 1753, 20 L.Ed.2d 835 (1968). Abstention was appropriate in *Kaiser Steel* because a "crucial" state law issue, involving water resources, implicated a "vital [State] concern in the arid State of New Mexico, where water is one of the most valuable natural resources." *Id.* at 594, 88 S.Ct. 1753; *see also* Chemerinsky, *Federal Jurisdiction* § 12.2.2.

█ Here, the general rule of *Allegheny County* and *Meredith* is applicable; abstention is inappropriate in this diversity action because the arguably unclear state law at issue in this case does not fall within the narrow exceptions of *Louisiana Power* and *Kaiser Steel*. That is, this case does not involve "vital" State concerns such as water resources in an arid region, *see Kaiser Steel*, 391 U.S. at 594, 88 S.Ct. 1753, nor does it involve "special and peculiar" eminent domain proceedings, *see Louisiana Power*, 360 U.S. at 28, 79 S.Ct. 1070. Although, on the surface, this case appears to include some aspects of an eminent domain case, Plaintiff's claim is not an eminent domain claim. Rather, Plaintiff's just compensation claim is based solely on Michigan's Highway Advertising Act and not on the Takings Clauses of the United States Constitution and the State of Michigan Constitution. Therefore, the Court will follow the general rule against exercising the abstention doctrine in diversity actions and proceed to adjudicate Plaintiff's claim under Michigan's Highway Advertising Act.

## IV. ANALYSIS

Michigan's Highway Advertising Act provides:

> A city, village, township, or charter township may enact ordinances to regulate and control the size, lighting, and spacing of signs and sign structures, but the ordinances shall not . . . *require or cause the removal* of lawfully erected signs or sign structures subject to this act *without the payment of just compensation.*

Mich. Comp. Laws § 252.304(a) (emphasis added). The legislature's purpose in enacting this statute is clear:

> To improve and enhance scenic beauty *consistent with section 131 of title 23 of the United States Code, 23 U.S.C. 131,* the legislature finds it appropriate to regulate and control outdoor advertising . . .

Mich. Comp. Laws § 252.303 (section entitled "Purpose of Act") (emphasis added). Accordingly, to better understand the scope of Mich. Comp. Laws § 252.304(a), one must consider 23 U.S.C. § 131, the federal Highway Beautification Act.

An important aspect of § 131 is its requirement that federal highway funds appropriated to a State be reduced by ten percent if a State does not enact provisions for the "effective control" (i.e., removal) of certain outdoor advertising, such as billboards, within 660 feet of Interstate or primary highways.[2] *See* 23 U.S.C. § 131(b). Thus, Michigan had a strong

---

2. Congress defined "effective control" to mean a plan to remove all signs within the 660–foot boundary except (1) official/directional signs, (2) on-site signs for the sale or lease of property, (3) on-site commercial signs, (4) landmark signs, and (5) free coffee signs of nonprofit organizations. *See* 23 U.S.C. § 131(c).

financial incentive for enacting its Highway Advertising Act and making sure that its Act complied with the terms of § 131.

Additionally, Congress was concerned about the negative economic impact upon persons affected by the removal of such signs. *See Vermont v. Brinegar*, 379 F.Supp. 606, 609 (D.Vt.1974). Therefore, Congress mandated that:

> *Just compensation shall be paid* upon the *removal* of *any* outdoor advertising sign, display, or device lawfully erected under State law and not permitted under [§ 131(c) [3]], *whether or not removed pursuant to or because of this section.*

23 U.S.C. § 131(g) (emphasis added). Congress amplified the importance of this just compensation requirement by allowing a State to establish stricter sign limitations but requiring that any such limitations be "[s]ubject to compliance with [§ 131(g)] for the payment of just compensation." 23 U.S.C. § 131(k).

■ Further, the reach of this just compensation mandate is expansive. Under the terms of § 131(g) and § 131(k), just compensation must be paid when a sign along an Interstate or primary highway is removed pursuant to or because of a local law that is unrelated to § 131. *See City of Ft. Collins v. Root Outdoor Advertising, Inc.*, 788 P.2d 149, 154 (Colo.1990) (quoting Fed. Highway Admin., 44 Fed.Reg. 25,389 (1979)); *RHP, Inc. v. City of Ithaca*, 91 A.D.2d 721, 457 N.Y.S.2d 645, 647 (N.Y.App.Div.1982) ("*Since the 12 billboards owned by plaintiff within 660 feet of Federally aided highways in the City of Ithaca are 'not permitted under [§ 131(c)],' [the trial court] correctly held that they could not be removed by [the City] without just compensation.*" (emphasis added)).

Thus, the threat facing Plaintiff in this case clearly comes within the scope of § 131(g). That is because (1) the billboard was lawfully erected; (2) the billboard is not permitted under § 131(c); and (3) the billboard is to be removed pursuant to local law, i.e., Defendant's ordinance and variance. *See* 23 U.S.C. § 131(g); *Ft. Collins*, 788 P.2d at 154; *RHP*, 457 N.Y.S.2d at 647. Consequently, under the plan of § 131(g), just compensation must be paid to Plaintiff upon the removal of its billboard.

■ However, § 131(g) does not provide for a private right of action for just compensation; rather, Congress enacted § 131(g) to encourage the States to pass complementary legislation and avoid a reduction in their federal highway funds. *See Parks v. Donrey, Inc.*, 596 F.Supp. 347, 350 (W.D.Ark.1984) (citing *Nat'l Advertising Co. v. City of Ashland*, 678 F.2d 106, 108 (9th Cir.1982) (ten percent penalty applies where compensation, as required by § 131(g), is not paid)).

■ Nevertheless, Michigan responded to this congressional encouragement, *see* Mich. Comp. Laws § 252.303, and included a broad just compensation provision in its Highway Advertising Act, *see* Mich. Comp. Laws § 252.304(a), which is the basis upon which Plaintiff seeks relief. Accordingly, since § 252.304(a) is intended to comply with § 131(g), and since Plaintiff is entitled to just compensation under § 131(g), Plaintiff is also entitled to just compensation under § 252.304(a). Moreover, under the terms of § 252.304(a) itself, Plaintiff is entitled to just compensation: Defendant is "requir[ing] or caus[ing] the removal of [a] lawfully erected [billboard] subject to [the Highway Advertising Act]." [4]

---

**3.** *See supra* note 2.

**4.** Plaintiff's billboard is "subject to" the Act because it is located in an "adjacent area," as

■ Defendant argues that Plaintiff is not entitled to just compensation under the Highway Advertising Act for two reasons. First, Defendant contends that the events in this case are not covered by the just compensation requirement of § 252.304(a) because this requirement became effective in 1999 and that the legislature did not intend this provision to apply retroactively. *See* Def. Resp. at 2–4. This argument is inapplicable here, however, because the pertinent events in this controversy were the expiration of the principal term of the lease on April 4, 2001, and Defendant's ensuing threat to remove or cause the removal of Plaintiff's billboard. These events occurred well after § 252.304(a) became effective. Furthermore, the fact that some events in this case occurred prior to 1999 does not negate the prospective application of § 252.304(a) in this situation. *See Hughes v. Judges' Ret. Bd.*, 407 Mich. 75, 86–87, 282 N.W.2d 160, 164 (1979) (citing *Clearwater Twp. v. Bd. of Supervisors*, 187 Mich. 516, 153 N.W. 824 (1915); *People ex rel. Albright v. Bd. of Trustees*, 103 Colo. 1, 82 P.2d 765 (1938)).

■ Second, Defendant maintains that Dr. Turkal has waived Plaintiff's claims under the Highway Advertising Act because he consented to the removal of Plaintiff's billboard from his real property.[5] *See* Def. Mot. at 18–19; Def. Resp. at 4–5. The Court disagrees. Defendant's contention that § 252.304(a) only requires just compensation if a sign is removed by the municipality itself is incorrect; § 252.304(a) plainly applies where the mu-

nicipality "require[s] or cause[s] the removal" of a sign. Here, Defendant is unquestionably so requiring or causing the removal.

Moreover, § 131(g) protects billboard owners caught in this very situation. After instructing when just compensation is to be paid, § 131(g) then directs to whom it should be paid:

■ Such compensation shall be paid for the following:

(A) The taking from the *owner of such sign*, display, or device of all right, title, leasehold, and interest in such sign, display, or device; and

(B) The taking from the *owner of the real property on which the sign, display, or device is located,* of the right to erect and maintain such signs, displays, and devices thereon.

23 U.S.C. § 131(g) (emphasis added). When § 252.304(a) is read in conjunction with § 131(g), *see* Mich. Comp. Laws § 252.303, *see also supra,* § 252.304(a) clearly requires the payment of just compensation to both the owner of the real property and the owner of the billboard. Further, the reference within § 252.304(a) itself to a "sign owner" also indicates that sign owners have duties as well as rights under § 252.304(a) (the sentence immediately after the just compensation language requires a "sign owner" to obtain an annual permit). Therefore, even if Dr. Turkal waived his right to just compensation under § 252.304(a) or the granting of the variance is considered payment of just

---

defined by Mich. Comp. Laws § 252.302(*o*), i.e., within 3,000 feet of an Interstate.

5. Contrary to Defendant's contention, its waiver argument is not supported by *Adams Outdoor Advertising v. City of East Lansing*, 463 Mich. 17, 614 N.W.2d 634 (2000), which was an eminent domain/takings case. Here, although Defendant attempts to characterize

Plaintiff's just compensation claim as an eminent domain claim, it is not an eminent domain claim. Rather, as discussed *supra* in Part III of this Order, Plaintiff's just compensation claim is based solely on Michigan's Highway Advertising Act and not on the Takings Clauses of the United States Constitution and the State of Michigan Constitution.

compensation to Dr. Turkal, Dr. Turkal's actions do not preclude Plaintiff's right to just compensation under § 252.304(a).

■ Thus, since Plaintiff is entitled to relief under Michigan's Highway Advertising Act, the Court need not address the other claims raised in the Complaint.[6] *See* Pl. Mot. at 1 n. 1. As Defendant admits in its Reply Brief, "[i]t is a basic and long-standing rule of construction that when two questions are raised [and] a resolution of the non-constitutional question makes unnecessary the decision on the constitutional question, only the non-constitutional question should be decided." Def. Reply Br. at 1 (citing *Alma Motor Co. v. Timken–Detroit Axle Co.*, 329 U.S. 129, 136, 67 S.Ct. 231, 91 L.Ed. 128 (1946); *Nagy v. Farmers Ins. Exch.*, 758 F.2d 189, 192 (6th Cir.1985)).

■ Finally, injunctive relief is appropriate in this case because both factors for a permanent injunction have been satisfied. One, Plaintiff has demonstrated that failure to issue the injunction is likely to result in irreparable harm, i.e., its billboard will be removed without just compensation. *See United States v. Miami Univ.*, 294 F.3d 797, 816 (6th Cir.2002) (quoting *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1068 (6th Cir.1998)). Two, Plaintiff has shown that there is no other adequate remedy at law, insofar as its injury is a threatened injury which only injunctive relief can prevent. *See Miami Univ.*, 294 F.3d at 816 (citing *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 311–20, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982); *Kallstrom*, 136 F.3d at 1067). Further-

more, because injunctive relief should be no broader than necessary to remedy the harm at issue, *see Miami Univ.*, 294 F.3d at 816 (citing *Kallstrom*, 136 F.3d at 1069), the Court will only enjoin Defendant from removing Plaintiff's billboard or requiring or causing the removal of Plaintiff's billboard until Plaintiff is paid just compensation.

## V. CONCLUSION

ACCORDINGLY, IT IS HEREBY OR-DERED that Plaintiff's Motion for Summary Judgment [docket entry 18] is **GRANTED**.

IT IS FURTHER ORDERED that Defendant's "Motion to Dismiss or for Summary Judgment" [docket entry 17] is **DENIED**.

IT IS FURTHER ORDERED that Defendant is **PERMANENTLY ENJOINED** from removing Plaintiff's billboard or requiring or causing the removal of Plaintiff's billboard unless and until Plaintiff is paid just compensation.

**SO ORDERED.**

---

**6.** To the extent Defendant's standing argument applies to the Highway Advertising Act claim, the Court holds that Plaintiff does have standing to sue. Plaintiff has adequately demonstrated that it has a concrete and particularized legally protected interest under the Highway Advertising Act that is imminently threatened (i.e., injury in fact), and that threat comes from Defendant (i.e., causal connection); further, it is likely that this injury will be redressed by a favorable decision (i.e., a permanent injunction protecting Plaintiff's billboard). *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *Zurich Ins. Co. v. Logitrans, Inc.*, 297 F.3d 528, 531 (6th Cir.2002).