Jimmie C. PELTIER et al.,
Plaintiffs-Appellants,

v.

ASSUMPTION PARISH POLICE JURY,
Defendant-Appellee.

No. 79–2486.

United States Court of Appeals,
Fifth Circuit.
Unit A

Feb. 23, 1981.

Rehearing Denied April 23, 1981.

Larry P. Boudreaux, Thibodaux, La., for plaintiffs-appellants.

Aubert Talbot, Dist. Atty., Napoleonville, La., Abbott J. Reeves, Gretna, La., for defendant-appellee.

Before GOLDBERG, POLITZ and SAM D. JOHNSON, Circuit Judges.

POLITZ, Circuit Judge:

In 1975 the Assumption Parish Police Jury, the local governing authority in a rural south Louisiana parish, adopted an ordinance establishing a parochial service for the collection and disposal of solid waste materials—garbage, rubbish and trash. The ordinance was amended in 1976 and again in 1978 to make it more comprehensive and detailed. As amended the ordinance provides for the discontinuance of water service as a penalty for the failure to pay garbage collection fees. In 1977 the police jury entered into a contract with the Assumption Parish Water District No. 1 pursuant to which the district bills and collects the fees for both water service and garbage collection. Of particular significance is the section which provides that non-payment of the garbage fee may result in the termination of water service to the affected premises. Water was "cut off" from the homes of several residents of Assumption Parish who were current in their water bills but who declined to pay garbage collection charges. Eleven of the persons affected filed the instant suit, individually and as a class action, seeking declaratory and injunctive relief. The district court found class certification unnecessary and, upon consideration of the filings and stipulation of the parties, held "that the practice of the Assumption Parish Police Jury to discontinue water utility service for non-payment of garbage collection charges is constitutionally permissible." We do not reach the constitutional issue as we find that the challenged actions of the Assumption Parish Police Jury exceed its authority. Accordingly, we reverse and remand.

*Constitutional vs. Statutory Resolution*

■ The complaint challenges the constitutionality of the actions of the Assumption Parish Police Jury, a question we do not reach because the dispute may be resolved on another basis. Accordingly, we are to decide this matter without addressing the constitutional question, for as the Supreme Court has directed:

This Court has said repeatedly that it ought not pass on the constitutionality of an act of Congress unless such adjudication is unavoidable. This is true even though the question is properly presented by the record. If two questions are raised, one of non-constitutional and the other of constitutional nature, and a decision of the non-constitutional question would make unnecessary a decision of the constitutional question, the former will be decided. This same rule should guide the lower courts as well as this one.

*Alma Motor Co. v. Timken Co.*, 329 U.S. 129, 136, 67 S.Ct. 231, 91 L.Ed. 128 (1946); *citing Siler v. Louisville & Nashville R. Co.*, 213 U.S. 175, 29 S.Ct. 451, 53 L.Ed. 753 (1908); *Light v. United States*, 220 U.S. 523, 31 S.Ct. 485, 55 L.Ed. 570 (1910); and *Spector Motor Service v. McLaughlin*, 323 U.S. 101, 65 S.Ct. 152, 89 L.Ed. 101 (1944).

Consistent with this mandate we declared in *Finch v. Mississippi State Medical Ass'n, Inc.*, 585 F.2d 765, 776 (5th Cir. 1978):

Within a relatively short time after the power and the duty of federal courts to declare federal statutes unconstitutional was established in *Marbury v. Madison*, 1803, 5 U.S. (1 Cranch) 137, 2 L.Ed. 60, and to rule on the invalidity of state statutes was elucidated in *McCulloch v. Maryland*, 1819, 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579, the federal courts recognized a corollary obligation, to avoid constitutional confrontation whenever possible. E. g., *Ex parte Randolph*, C.C.D.Va.1833, 20 Fed.Cas. No. 11,558, p. 242. As applied to questions of interpretation of state law, this doctrine requires us to resolve federal constitutional claims only when a case cannot be decided on any other basis. The power of judicial review should be employed by the least democratic branch of the government only when decision inescapably requires it . . . .

From this legal launch pad we examine the applicable provisions of Louisiana law.

### The Police Jury

■ The police jury form of government is found in almost all of Louisiana's 64 parishes. The authority of the parish police jury is vast but not plenary; police juries share with the legislature the police power of the state. As the Louisiana Supreme Court observed in *Rollins Environmental Serv. v. Iberville Parish*, 371 So.2d 1127, 1131 (La.1979):

A police jury in this State is a creature and subordinate political subdivision of the State and as such only possesses those powers conferred by the State's Constitution and statutes. La.Const. art. VI § 7(A); *Union Sulphur Co. v. Parish of Calcasieu*, 153 La. 857, 96 So. 787 (1923). *Hall v. Rosteet*, 247 La. 45, 169 So.2d 903 (1964); *State v. Hertzog*, 241 La. 783, 131 So.2d 788 (1961); *B. W. S. Corporation v. Evangeline Parish Police Jury*, 293 So.2d 233 (La.App.1974).

The statutory authority accorded to police juries is found in Title 33 of the Louisiana Revised Statutes of 1950. Section 1236 therein sets out the general powers conferred on police juries relevant to the instant inquiry. We note in particular La. R.S. 33:1236(16), (31) and (33), relating to the prevention of contagious disease and the disposal of solid wastes. These subsections provide:

The police juries and other parish governing authorities shall have the following powers:

\*　　\*　　\*　　\*　　\*　　\*

(16) To enact ordinances and regulations, not inconsistent with the laws and constitution of the United States, nor of this state, to protect their respective parishes against the introduction of every kind of contagious disease.

\*　　\*　　\*　　\*　　\*　　\*

(31) To enact ordinances to require, prohibit, or regulate the destruction, disposal, or burning of trash, garbage, leaves, limbs and branches, or debris of any kind and to regulate dumping and the use of borrow pits for sanitary fill.

\*   \*   \*   \*   \*   \*

(33) To regulate the collecting, pickup and transportation of garbage and trash, within the parish but outside incorporated municipalities, and to grant franchises, exclusive or nonexclusive to garbage and trash collectors, provided that an exclusive franchise shall be granted only after advertising, reception of bids and awarding of contract in accordance with law. The provisions of this Paragraph shall not apply in the parishes of Acadia, Vermillion, St. Landry, St. Charles, St. John the Baptist, St. James, St. Tammany, Ouachita, Ascension, Terrebonne, Evangeline, East Baton Rouge, Livingston, St. Helena, Jefferson, Jefferson Davis, Tangipahoa, Bossier, Rapides, Cameron, Grant, DeSoto, Sabine, Red River, Webster and Lafayette.

This general grant of power confers substantial responsibility over solid waste disposal which may, at first blush, appear sufficient to authorize the billing and collection procedure established by the Assumption Parish Police Jury. This initial impression fades upon consideration of other statutory provisions.

Bearing in mind that the police jury has only those powers conferred, we find particularly relevant La.R.S. 33:4169 entitled: "Collection contracts for sewerage service charges; garbage service charges." In subsections (A) and (D) the legislature authorizes local governmental units to establish joint billing for water and sewerage, and to provide that the failure to pay for either service may lead to the termination of the water supply.[1] It is important to note that subsections (A) and (D) relate only to water and sewerage; there is no reference to solid waste.

The legislature has addressed the subject of the joint billing of garbage collection fees and water fees, as well as the termination of water services for failure to pay

---

1. La.R.S. 33:4169 (A) and (D) provide:

A. Any municipal corporation, parish or sewerage district operating a sewerage system shall have power to execute a contract with any private water company serving customers in the area served by said sewerage system, and any private water company is authorized and empowered to execute and enter into a contract with any municipal corporation, parish or sewerage district, providing sewerage service to customers of said water company, which contract may contain such terms and privileges as may be agreed upon between the parties thereto pursuant to which service charges imposed for service rendered by the sewerage system will be collected for the municipal corporation, parish or sewerage district by the water company or providing for a procedure to enforce collection of sewer charges by an agreement to shut off the service of the supply of water to any premises delinquent in the payment of either its water charges or sewer charges. Such municipal corporation, parish or sewerage district may agree to supply any such water company with such indemnity bond or liability insurance as such water company may consider necessary for its protection. Any such contract shall not require the approval of any state department, agency or commission.

D. Any municipal corporation, parish, or water district operating a water system shall have the power to execute a contract with any private sewerage company serving customers in the area served by said sewerage system, and any private sewerage company is authorized and empowered to execute and enter into a contract with any municipal corporation, parish, or water district, providing water service to the customers of said sewerage company, which contract may contain such terms and privileges as may be agreed upon between the parties thereto, pursuant to which service charges imposed for service rendered by the private sewerage company will be collected by the municipal corporation, parish, or water district or providing for a procedure to enforce collection of sewer charges by an agreement to shut off the services of the supply of water to any premises delinquent in the payment of either its water charges or sewer charges. The municipal corporation, parish, or sewer district may require any such sewerage company to supply such indemnity bond or liability insurance as the municipal corporation, parish, or water district may consider necessary for its protection and any such contract shall not require the approval of any state department, agency or commission.

either, in La.R.S. 33:4169(B) and (C) which prescribe:

B. The governing body of the parish in which the State Capitol is situated shall be and is hereby empowered and authorized to execute a contract or contracts with a private water company or companies serving customers in the area served by a public garbage collection system and any such private water company is authorized and empowered to execute and enter into a contract with said governing authority, which contract may contain such terms and privileges as may be agreed upon by the parties thereto, pursuant to which a sanitation service fee imposed for services rendered by the garbage collection system will be collected for said parish by the water company in the same manner and subject to the same authorizations and provisions as contained in the preceding paragraph.

C. All contracts entered into pursuant to the provisions of subsection (B) shall be subject to the approval of the Louisiana Public Service Commission.

The joint billing and collection procedure for garbage and water bills of the type undertaken by the Assumption Parish Police Jury is authorized, but only in the parish in which the state capitol is situated (East Baton Rouge Parish). The specific grant of authority in the case of East Baton Rouge parish is significant because it demonstrates that the Louisiana Legislature obviously did not consider the general grant of power to deal with solid wastes broad enough to encompass this extraordinary procedure. The legislature has not given the Assumption Parish Police Jury the authority to enact the subject ordinance or to enter into the challenged contract.

The ordinance and contract are invalid for they are based on a power not conferred on this police jury. Having reached this conclusion we do not reach the constitutional issue and we express no opinion as to whether such authority may be appropriately conferred. We limit ourselves to the observation that, to modern man, running water is a necessity of life. To terminate

such a basic utility is a serious matter which may only be done in a manner totally consistent with stringent due process requirements. *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978).

The decision of the district court is REVERSED. The matter is REMANDED for further proceedings consistent herewith.