# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 17, 2009

Charles R. Fulbruge III
Clerk

No. 08-30359

CESAR CARILLO

Plaintiff-Appellee

v.

LOUISIANA INSURANCE GUARANTY ASSOCIATION

Defendant-Appellant

Appeal from the United States District Court
for the Eastern District of Louisiana

Before SMITH and SOUTHWICK, Circuit Judges, and ENGELHARDT, District Judge.[*]

LESLIE H. SOUTHWICK, Circuit Judge:

The Louisiana Insurance Guaranty Association ("LIGA") appeals the district court's judgment enforcing a twenty percent additional sum for late payment of an award to an injured worker. It argues that it should not be assessed the additional amount because it paid promptly after getting delayed notice of the award. We find no reversible error and AFFIRM.

Cesar Carillo was injured in the course of his employment. His injuries were covered under the Longshore and Harbor Workers' Compensation Act

---

[*] District Judge of the Eastern District of Louisiana, sitting by designation.

("LHWCA"). LIGA is a guaranty fund created by state law that pays statutorily permitted claims when a private insurer becomes insolvent, as occurred here. *See* La. Rev. Stat. Ann. § 22:2056. LIGA settled Carillo's claim. The parties submitted the settlement to the Office of Workers Compensation Programs ("OWCP"), a division of the U.S. Department of Labor. The District Director of the New Orleans OWCP approved the settlement on February 27, 2006. According to LIGA, it received no notice of the approved claim until March 16. The day after LIGA alleges it received notice, it paid the claim.

By that time, Carillo already had filed a request with the District Director for twenty percent additional compensation that becomes due when more than a ten-day delay occurs in payment of a compensation order. LIGA disputed that the payment was late. The District Director submitted the dispute to an administrative law judge for hearing, which was held on August 29, 2006. On April 24, 2007, that judge entered an order requiring LIGA to pay the additional amount. On June 19, 2007, rehearing was denied and the matter was returned to the District Director. On July 27, 2007, the District Director issued a supplemental order of default enforcing the decision.

In its brief, LIGA asserts that it timely appealed the last-named order to the Department of Labor's Benefits Review Board. There is some record evidence that an appeal was taken on July 19, 2007, but we are not aware of whether it was pursued, and if so, its disposition.

Carillo filed for enforcement in district court on August 10, 2007. Enforcement was ordered. LIGA appeals to this court.

## DISCUSSION

We are presented with two arguments. First is that "filing" a compensation order with the District Director, which starts the ten-day time period for payment, must include receipt of the order by the parties. Second,

LIGA argues that a state statute exempts it from paying the twenty percent additional amount. We separately examine each issue.

### 1. Meaning of "Filing" of Compensation Order

The LHWCA has a detailed set of rules for the processing of claims by injured workers. The reason for today's dispute is a provision stating that if compensation that has been ordered is not paid within ten days from when it is due, a twenty percent additional amount must be paid:

> If any compensation, payable under the terms of an award, is not paid within ten days after it becomes due, there shall be added to such unpaid compensation an amount equal to 20 per centum thereof, which shall be paid at the same time as, but in addition to, such compensation, unless review of the compensation order making such award is had as provided in section 921 of this title and an order staying payment has been issued by the Board or court.

33 U.S.C. § 914(f). The obvious question is when does compensation become due. Both parties have agreed that the following provision, which makes a compensation order "effective" upon its filing with the OWCP District Director,[1] establishes the date that begins the ten-day period:

> A compensation order shall become effective when filed in the office of the [District Director] as provided in section 919 of this title, and, unless proceedings for the suspension or setting aside of such order are instituted as provided in subsection (b) of this section, shall become final at the expiration of the thirtieth day thereafter.

*Id.* § 921(a).

There are still the loose ends of an order's becoming "effective" in Section 921(a) and its becoming "due" for purposes of Section 914(f). Tying them

---

[1] Some of the statutes we will quote refer to "deputy commissioner," which is an out-of-date title. The District Director has replaced that official; some duties have been assumed by administrative law judges. *See* 20 C.F.R. § 725.101(a)(16); *Betty B Coal Co. v. Dir., OWCP*, 194 F.3d 491, 497 n.1 (4th Cir. 1999).

together was done long ago when we determined that the terms are equivalent. *Tidelands Marine Serv. v. Patterson*, 719 F.2d 126, 127 n.1 (5th Cir. 1983).

The doubt LIGA finds remaining despite the settled questions concerns just when the 2006 order that approved Carillo's claim was effectively "filed" with the District Director. The relevant statutory section provides for receipt by the District Director and a mailing to the claimant and employer:

> The order rejecting the claim or making the award (referred to in this chapter as a compensation order) shall be filed in the office of the [District Director], and a copy thereof shall be sent by registered mail or by certified mail to the claimant and to the employer at the last known address of each.

33 U.S.C. § 919(e). LIGA argues that the entirety of these statutory duties must be satisfied before a filing has occurred. Specifically, it argues that some form of service on the parties must occur before filing is complete. Thus, the ten-day deadline for paying an approved claim would not begin until LIGA received notice. Once it received notice, LIGA asserts that it paid immediately.

The district court rejected this argument when, on October 22, 2007, it denied LIGA's Federal Rule of Civil Procedure 12(b)(6) motion to dismiss for failure to state a claim. The court found that mailing the compensation order to the parties was not part of the requirement of filing. On February 29, 2008, the district court granted summary judgment and ordered enforcement. The court stated that LIGA did not claim that it had filed an appeal to the Benefits Review Board. The court in that statement was responding to LIGA's argument that it should never have accepted Carillo's original claim. Certainly, though, the initial settlement of the claim for compensation was no longer a live issue. The district court appears to have been holding that it "does not have jurisdiction to hear such an appeal," meaning of the initial compensation order, not of the supplemental one. The court in its October 2007 order had considered the merits

4

of the argument about how to compute the ten days, and thus LIGA's principal merits argument had earlier been analyzed and rejected by the district court.

It is agreed that no appeal to the Benefits Review Board was taken of the initial compensation order. As to the supplemental order, we have already noted that LIGA alleges that it did appeal. There is scant, but not totally absent, record evidence of that. The one document we found was a July 25, 2007 notice by a Department of Labor claims examiner that a conference was cancelled because the "Employer/Carrier" had on July 19 appealed to the Benefits Review Board. As we will discuss, this factual question is of no importance to our resolution of the issues before us.

In beginning our review, we categorize the order that assessed a penalty on April 24, 2007, which the district court enforced. Such an order is labeled a "supplemental order of default." *See In re Comp. under the LHWCA (Abbott v. La. Ins. Gty. Ass'n)*, 889 F.2d 626, 630 (5th Cir. 1989). In *Abbott*, the underlying compensation order was still the subject of an appeal to the Benefits Review Board; its validity was not before the court for review. *Id*. at 628. Once the internal Labor Department appeal of the underlying order was concluded, there would have been a right to judicial review. 21 U.S.C. § 921(c). That stage had not yet been reached. While the administrative appeal of that order continued, a supplemental order of default was entered by an administrative law judge and enforced by the district court. Our then-Chief Judge, Charles Clark, wrote that supplemental orders of default were part of a "quick and inexpensive mechanism for the prompt enforcement of unpaid compensation awards," and no administrative appeal from those orders was permitted. *Id*. at 629.

We had in an earlier case similarly held that suits for "payment of compensation due under either § 914(f) or any other substantive section of the LHWCA are to be brought in the district court and, only subsequent thereto, by appeal to the appropriate court of appeals." *Tidelands*, 719 F.2d at 129. It is not

proper to appeal final orders under Section 914(f) to the Benefits Review Board. *Id.* A district court is the initial venue for review of the supplemental orders.

We acknowledge that because the underlying compensation order had already been paid, the need for prompt enforcement of what was only twenty percent of the compensation was not as acute as in *Abbott.* Yet this additional amount is part of the overall compensation. Therefore, we find no basis to bar immediate enforcement of even this supplemental order.

The next question is the extent of the judicial review to be given the supplemental order. The statute authorizing enforcement provides that the supplemental order is "final." Upon the order's filing in district court, it will be enforced if it is "in accordance with law." 33 U.S.C. § 918(a). In *Abbott*, we reviewed the procedural requirements of the statute governing the orders. We found that Section 918 required such steps as an investigation of the claimant's application, notice to all interested parties, an opportunity for a hearing, and a determination of the amount of the default. 889 F.2d at 629. We then found that the order of default will be "in accordance with law" if the procedural requirements are met. *Id.* There is no complaint here that any of those procedures were bypassed. The relevant portion of the procedure for us is that an order be entered "declaring the amount of the default," which is then filed as was the original compensation order. 33 U.S.C. § 918(a). LIGA argues that the declaring of a default was erroneous.

We compare what we are being asked to review to what in *Abbott* we said could not be reviewed. Chief Judge Clark wrote that the compensation award itself was not reviewable as part of the enforcement of the supplemental order of default. *Abbott,* 889 F.2d at 630. LIGA does not here seriously challenge the underlying compensation order – indeed, it has paid it. Instead, it argues that there never was a delay in payment. We conclude that LIGA's issue is properly before us. We now turn to its merits.

The argument that "filing" of compensation orders is not complete until there is some notice to the parties is not a novel one. Because of the ten-day deadline for payment, delay in receiving notice of the obligation to pay is a justifiable concern for the insurance carrier. Recently, we examined the filing requirement. *Grant v. Dir., OWCP*, 502 F.3d 361 (5th Cir. 2007). We noted that Section 919(e) required the compensation order to "be filed in the office of the [District Director], and a copy thereof shall be sent . . . to the claimant and to the employer . . . ." *Id*. at 364. Under that language, the "affirmative act of filing" would "occur only *after* the paper has been received." *Id*. at 365.

In addition to the statutory requirement, a regulation requires the District Director to date and file the order, then to mail it:

> Upon receipt thereof, . . . the district director . . . shall formally date and file the transcript, pleadings, and compensation order (original) in his office. Such filing shall be accomplished by the close of business on the next succeeding working day, and the district director shall, on the same day as the filing was accomplished, send by certified mail a copy of the compensation order to the parties and to representatives of the parties, if any.

20 C.F.R. § 702.349. All these provisions mean that "(1) filing a compensation order requires a 'formal act' by the District Director; and (2) the District Director can only file the order after it is received." *Grant*, 502 F.3d at 364.

In *Grant*, the District Director admitted that he had not dated and filed the order and that he had not served it on the parties. *Id*. at 362. Consequently, the real issue was whether mere receipt in the District Director's office sufficed. We concluded that "filing requires, at a minimum, formal action by the District Director," but we reserved the question of whether filing "also requires service of the order upon the parties by the District Director." *Id*. at 365. In this case, the issue cannot again be reserved for another day.

As we analyze the concept, we note the widely accepted definition that a "paper is filed when it is delivered to the proper official and by him received and filed." *United States v. Lombardo*, 241 U.S. 73, 76 (1916). In *Grant*, we described this definition as "somewhat circular." 502 F.3d at 364. The definition does at least have the advantage of some clarity: whether a document is filed does not depend on whether others are informed. The LHWCA is consistent with this understanding. As noted, Section 919(e) provides that the order is to "be filed in the office of the [District Director], and a copy thereof shall be sent," a phrasing that indicates that filing is completed and *then* the copy is sent out to the interested parties. The regulation provides that the order and other documents are to be dated and filed. It is after the filing that "the District Director shall, on the same day as the filing was accomplished," send notice to parties. 20 C.F.R. § 702.349.

In passing on the issue in *Grant*, we recognized an apparent circuit split.[2] 502 F.3d at 365. One of our precedents indicates that we have already taken a side on this issue. *Lauzon v. Strachan Shipping Co.*, 782 F.2d 1217, 1220 (5th Cir. 1985). We determined that a three-day grace period provided by then-Federal Rule of Civil Procedure 6(e) to parties who must "do some act . . . within a prescribed period after the service of a notice" did not apply to parties in the position of LIGA. That was because the "award becomes 'effective' when '*filed in the office of the*'" District Director, not when served on the parties. *Id.*

---

[2] *Compare Sea-Land Serv., Inc. v. Barry*, 41 F.3d 903, 908-09 (3d Cir. 1994) (holding that filing and mailing are "two distinct procedures"), *and Jeffboat, Inc. v. Mann*, 875 F.2d 660, 662-63 & n.4 (7th Cir. 1989) (finding the question "arguable" and noting that the statute "does not explicitly make mailing part of filing"), *with Nealon v. Cal. Stevedore & Ballast Co.*, 996 F.2d 966, 970-71 (9th Cir. 1993) (holding that filing includes service on the parties). In *Nealon*, the Ninth Circuit found the statutory language "highly ambiguous," and rested its decision on analogous cases decided under the Black Lung Act and the LHWCA's purpose of delivering benefits to injured workers. 996 F.2d at 970. *Nealon* did not mention this court's decision in *Lauzon*, dismissed *Jeffboat* as not having decided the question, and was decided before the Third Circuit issued *Barry*.

(quoting 33 U.S.C. § 921(a)) (emphasis in *Lauzon*).  Thus, "the time for payment started running when the award was *filed* and not when [the employer] was *served*."  *Lauzon*, 782 F.2d at 1220.

We conclude that filing occurs once the initial acts by the District Director have occurred – such as the formal dating of the order and its filing in the office.  That filing must occur by the end of the first working day after receipt.  By the end of that same day but after the act of filing has been accomplished, the District Director is to send the order to the parties.

Even were we to read the statute and regulation as making the sending of the order to the parties part of the act of filing – and we do not –  LIGA does not dispute that the District Director did in fact formally date, file, and send the order via certified mail, all on February 27, 2006.  We find no manner in which to make receipt of the order in a timely fashion by a party fit within the statute and regulation's description of the act of filing.  LIGA makes an equitable point by speculating that delay in delivery occurred due to Mardi Gras or the relocation of the OWCP in the aftermath of Hurricane Katrina.  Even if that is so, clearly LIGA was aware of its own settlement.  Whether LIGA itself submitted the settlement to the OWCP on February 22 is not stated, but LIGA would have known the submission was occurring, of its potential obligation for a twenty percent surcharge, and of the problems of post-Katrina New Orleans.  LIGA's awaiting the mail was less than diligent.

*2. Louisiana Statutory Bar to Liability for Penalty*

LIGA's other appellate argument is that a Louisiana statute bars liability for the late payment at issue here.  *See* La. Rev. Stat. Ann. § 22:2067 (2009) (formerly codified at *id*. § 22:1391).  The statute provides there is no "liability on the part of and no cause of action" against LIGA or its officers "for any action taken by them in the performance of their powers and duties."  *Id*.

In one case, a Louisiana court held this provision exempted LIGA from a statutory finding that an insurer breaches its duty to an insured by paying more than thirty days after a settlement agreement was reached. *Caulfield v. Leonard*, 676 So. 2d 1117, 1119 (La. App. 5th Cir.), *writ denied*, 681 So. 2d 1262 (1996). Even if Section 22:2067 has some relevance to our issue, we add that one of our sister circuits has held that a Section 914(f) payment is not fairly seen as a "penalty or fine"; rather, it is a core part of the "compensation" established by the statute. *Tahara v. Matson Terminals, Inc.*, 511 F.3d 950, 953 (9th Cir. 2007). An extra charge when a payment is late does not appear to be a cause of action. Whether it is a liability in the sense barred by Section 22:2067 is a more difficult question.

We end our consideration of the merits of the argument without giving an answer because the issue is not properly before us. The statute exempting LIGA from certain kinds of liability was not presented and argued to the district court. Instead, in its motion to dismiss filed two weeks after suit was filed, LIGA argued the twenty-percent extra compensation awarded for late payments was not a "covered claim" it could pay. LIGA was a "mechanism for the payment of covered claims . . . to avoid financial loss to claimants or policyholders because of the insolvency of an insurer . . . ." La. Rev. Stat. Ann. § 22:2052. It argued that the following statutory definition made it improper to pay this kind of claim:

> (d) "Covered claim" shall not include any claim based on or arising from a pre-insolvency obligation of an insolvent insurer, including but not limited to contractual attorneys' fees and expenses, statutory penalties and attorneys' fees, court costs, interest and bond premiums, or any other expenses incurred prior to the determination of insolvency.

*Id.* § 22:2055(3). The district judge rather unremarkably found that an extra charge due to the delay in LIGA's payment of the compensation was not a pre-insolvency obligation of another insurance company.

In addition, the statutory definition of "covered claim" does not clearly exempt paying the twenty percent additional compensation:

> (a) "Covered claim" means an unpaid claim . . . which arises out of and is within the coverage and not in excess of the applicable limits of an insurance policy to which this Part applies issued by an insurer, if such insurer becomes an insolvent insurer after September 1, 1970.

*Id.* The obligation of an insurer to comply with a federal provision for late payments would seem to arise out of and be within the coverage of that policy.

The Louisiana statutory argument that was presented in the district court has been abandoned here. We do not reach the different statutory issue that is raised on appeal. The usual considerations that justify not reaching an argument first presented on appeal fully apply. *Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 313 (5th Cir. 2005). In addition to those, it is worth remarking that should the issue fairly be before us that a Louisiana statute blocks the twenty percent additional compensation required by the LHWCA, the constitutional issues surrounding federal preemption would arise. We are loath to use our intrusive power of reviewing the constitutionality of a state statute unless the issue is squarely before us. *Peltier v. Assumption Parish Police Jury,* 638 F.2d 21, 22 (5th Cir. Unit A Feb. 1981). An answer is not necessary here as the question on which it would be based was not asked below.

The judgment of the district court is AFFIRMED.